This is an appeal from a judgment of the Circuit Court of Etowah County granting appellee Thelma Entrekin's request for a permanent injunction enjoining appellant City of Gadsden from interfering with the placement of a modular home upon her property. For the reasons hereinafter set forth, we reverse and remand.
The appellee owned a vacant lot located in an R-1, single family residential zone in the City of Gadsden, and wanted to place a mobile home on the property as a place of residence. In attempting to obtain a permit authorizing her to locate a mobile structure on the property, appellee was informed that a permit could not be given unless a special exception was first obtained from the Board of Adjustment of the City of Gadsden pursuant to Gadsden City Code, Ordinance No. 1988. That ordinance provides in pertinent part that:
 Trailers, mobile homes, mobile home courts and trailer parks shall not be located in any districts specified in this ordinance unless application is first made to the Board of Adjustment, and upon special exception issued by said Board in accordance with this ordinance, after due notice and public hearing before such Board.
The ordinance lists certain prerequisites which must be met before a special exception for a mobile home can be given. A mobile home is defined under the code as follows:
 Trailer, automobile trailer, trailer coach or mobile home means any vehicle or structure so designed and constructed in such manner as will permit occupancy thereof as sleeping quarters for one or more persons, or the conduct of any business or profession (or use as a selling or advertising device) and so designed that it is or may be mounted on wheels and used as a conveyance on highways or city streets, propelled or drawn by its own or other motive power, except a device used exclusively upon stationary rails or tracks, whether or not the same is actually mounted on wheels or affixed to the realty in any manner.
Pursuant to these provisions, the appellee filed her petition for a special exception on September 7, 1979. The Board of Adjustment denied that petition on September 27, 1979. No appeal from this ruling was ever taken.
On October 1, 1979, the appellee entered into an agreement with Coosa Valley Mobile Homes whereby she agreed to purchase a "modular" home, a structure quite different from the mobile home originally considered by the Board of Adjustment. The record establishes that a "modular" home consists of two prefabricated sections which are joined together on the location of the proposed residence. The structure is pulled to the installation site on wheels and axles attached to the steel beam construction under the floor. It is moved by a tow truck with a tongue attached to the steel beams. After reaching the site, the wheels, axles and tongue are removed and sold back to the manufacturer. Thereafter, the home is placed upon a permanent foundation.
In contemplating the proposed placement of the modular home on the appellee's property, the appellee's attorney approached a Mr. Cary Cooper, Building Official for the City of Gadsden, and asked him whether he would issue a building permit for the construction of the home. Mr. Cooper refused. As a result, Mrs. Entrekin filed suit to enjoin the City's interference with the location of the structure on her property. A *Page 831 
trial was held, and the jury found that a "modular" home was not a mobile home and the trial court duly entered judgment in the appellee's favor.
The sole issue raised on this appeal is whether the trial court had jurisdiction to entertain the appellee's action and grant the permanent injunction when it is clear from the record that the appellee failed to exhaust available administrative remedies. We hold that it did not.
Code 1975, § 11-52-80, is the enabling section which authorizes corporate municipalities to provide for the appointment of local boards of adjustment. The general purpose of these boards is to administer the zoning ordinances of the city and, where specifically authorized, to make ". . . special exceptions to the terms of the ordinance in harmony with its general purposes and interests and in accordance with general or specific rules therein contained." Code 1975, § 11-52-80
(a). In delineating the specific powers of the board, §11-52-80 provides:
 (d) The board of adjustment shall have the following powers:
 (1) To hear and decide appeals where it is alleged there is error in any order, requirement, decision or determination made by an administrative official in the enforcement of this article or of any ordinance adopted pursuant thereto;
 (2) To hear and decide special exceptions to the terms of the ordinance upon which such board is required to pass under such ordinance; and
 (3) To authorize upon appeal in specific cases such variance from the terms of the ordinance as will not be contrary to the public interest, where, owing to special conditions, a literal enforcement of the provisions of the ordinance will result in unnecessary hardship and so that the spirit of the ordinance shall be observed and substantial justice done.
 (e) In exercising the powers mentioned in subsection (d) of this section, such board may, in conformity with the provisions of this article, reverse or affirm, wholly or partly, or may modify the order, requirement, decision or determination appealed from and may make such order, requirement, decision or determination as ought to be made and, to that end shall have all the powers of the officer from whom the appeal is taken. The concurring vote of four members of the board shall be necessary to reverse any order, requirement, decision or determination of any such administrative official or to decide in favor of the applicant on any matter upon which it is required to pass under any such ordinance or to effect any variation in such ordinance.
In turn, Code 1975, § 11-52-81 provides that:
 Any party aggrieved by any final judgment or decision of such board of zoning adjustment may within 15 days thereafter appeal therefrom to the circuit court by filing with such board a written notice of appeal specifying the judgment or decision from which the appeal is taken. In case of such appeal such board shall cause a transcript of the proceedings in the action to be certified to the court to which the appeal is taken, and the action in such court shall be tried de novo.
Thus, a very definite remedial scheme has been established whereby an aggrieved party can contest the application or interpretation of a zoning ordinance on an administrative level before entering a court of law.
Acting upon the enabling provisions of § 11-52-80, the City of Gadsden enacted Ordinance No. 2143 which established the Housing and Building Board of Adjustments and Appeals. The duties of said board are described as follows:
 The duties of the Housing and Building Board of Adjustments and Appeals shall be (a) to consider and determine appeals whenever it is claimed that the true intent and meaning of the Standard Housing Code or the Standard Building Code or any of the regulations thereunder have been misconstrued or wrongly interpreted; (b) to permit, in appropriate circumstances, where the application of the requirements of the Standard Housing Code would appear to cause undue hardship *Page 832 
on an owner, a reasonable extension of time, provided, however, no such extension shall be granted for more than eight (8) months from the date of such notice; (c) to vary the application of any provision of the Standard Building Code in any particular case when, in its opinion, the enforcement thereof does manifest injustice, and would be contrary to the spirit and purpose of the Code or public interest, or when, in its opinion interpretation of the Building Official should be modified or reversed; (d) to vary the application of any provision of the Building Code or modify an order of the Building Officials, a decision of the Board shall specify in what manner such variation or modification is made, the conditions upon which it is made, and the reasons therefor. No appeal should be considered where an appeal case has been previously decided involving the same premises.
With regard to what types of appeals are available, the ordinance provides that:
 Whenever the Building Official shall reject or refuse to approve the mode or manner of construction proposed to be followed or material to be used in the erection or alteration of a building or structure, or when it is claimed that the provisions of the Standard Building Code do not apply, or that an equally good or more desirable form of construction can be employed in any specific case, or when it is claimed that the true intent and meaning of the Standard Building Code or any of the regulations thereunder have been misconstrued or wrongly interpreted, the owner of a building or structure or his duly authorized agent, may appeal from the decision of the Building Official to the Housing and Building Board of Adjustments and Appeals. Notice of an appeal of this nature shall be in writing and filed within 90 days after the decision is rendered by the Building Official.
Looking to these provisions, we are convinced that administrative remedies were available to the appellee whereby she could have challenged the judgment of the Building Official in denying her request for a building permit. The question remains, however: Was the appellee required to exhaust them?
The application of the exhaustion doctrine to zoning matters is a principle well recognized in the law. As noted by Eugene McQuillin in his treatise on municipal corporations:
 It is a general rule that a party seeking relief under the zoning laws must first pursue and exhaust the administrative remedy available to him before bringing an action or proceeding for judicial relief, unless the administrative remedy is inadequate or nonexistent. The rule is based upon the common necessity for orderly procedure, and it has been said not to be an absolute rule of law, but one of policy, convenience and discretion, particularly since the prerogative powers of the court are protected from change by zoning as well as by other legislation. The view has also been taken that the very purpose of the rule is to give to the local authorities an opportunity to correct any error in the zoning classification, or to remedy any unreasonable hardships imposed thereby before the aggrieved party enters into litigation. Furthermore, although there is contrary authority, the remedy provided by the zoning laws may be exclusive. This general principle has, of course, no application to cases in which relief is sought on the theory that the zoning laws are completely invalid, void, or unconstitutional, as more fully discussed below.
 Injunctive or other equitable relief may be denied a party if the zoning law provides an adequate remedy, as where it provides a remedy by complaint, application or petition to a board of adjustment or the like, and an appeal from and review of its decision by the courts. Provision by law for a remedy by complaint to a municipal board of appeals, whose action is reviewable by the courts, has been held to preclude injunctive relief against a classification of property. Injunctive relief may be granted even in the absence *Page 833 
of resort to administrative remedies, however, where the enforcement or threatened enforcement of a zoning ordinance by criminal process against the property owner constitutes irreparable injury.
McQuillin, Municipal Corporations § 25.283 (2d ed. 1976). Likewise, in Yokley, Zoning Law and Practice, § 24-11 (4th ed. 1979), it is stated that:
 Many decisions attest the rule that the exhaustion of administrative remedies is a prerequisite to court action in zoning matters.
 Where an act affords the right of appeal from an order of an administrative character by a building inspector, one who is dissatisfied with an order of such official revoking a building permit should pursue the statutory method of appeal and not seek the injunctive processes of the courts.
See also Metzenbaum, Law of Zoning, Vol. I, Chapter IX-e-(2) (2d ed. 1955); 101A C.J.S. Zoning Land Planning §§ 280-281 (1979); 82 Am.Jur.2d Zoning and Planning §§ 331-332 (1976); and Annot. 136 A.L.R. 1378.
In addition to these authorities and the cases cited therein, this Court in Watson v. Norris, 283 Ala. 380, 217 So.2d 246
(1969), applied the exhaustion doctrine in a case involving an attack upon a zoning administrator's denial of a use permit. The plaintiffs in that case sought relief by filing a petition for writ of mandamus ordering the administrator to withdraw his denial. The defendant administrator demurred to the petition, alleging, inter alia, that the petitioners failed to exhaust their administrative remedies. This Court, Justice Harwood writing, held:
 [I]t seems to be the doctrine of the heavy preponderance of the decisions, both state and federal, that where a complainant attacks the constitutionality or reasonableness of specific provisions of a zoning ordinance as it applies to a particular property, he must exhaust the available administrative remedies before resorting to court action. For a full analysis of the above doctrine, together with the authorities in support thereof, we refer interested parties to Metzenbaum, Law of Zoning, 2nd Ed., Vol. 1, Chapter IX-e (1) and (2). See also Davis, Administrative Law Text, Chapter 20.
As observed in Metzenbaum, supra, at page 713:
 In each state, there are many thousands of buildings and many thousands of parcels of land.
 If each plaintiff were permitted to engage the courts with proceedings attacking the constitutionality or the unconstitutional-unreasonableness of each zoning ordinance as it applies to such complainant's own property, without first seeking relief by the available administrative remedies, would not the courts of every state be clogged with such actions virtually to the exclusion of other matters?
 Would there not be so great a flood of such proceedings as to overwhelm the courts?
We are thus led to the inescapable conclusion that one must exhaust his remedies in a zoning matter before entering a court of law. We fully recognize that this rule is not absolute and without exceptions. As noted in 101A C.J.S. Zoning LandPlanning § 281 (1979), these exceptions generally arise where (1) the question raised is one of interpretation of the statute or (2) the action raises questions of law only and not matters requiring administrative findings of fact or an exercise of administrative discretion. In addition, administrative remedies need not be exhausted where doing so would be futile or where the remedies provided are inadequate. Likewise, one need not pursue administrative remedies when irreparable injury is threatened.
None of these possible exceptions exists in the present case. Appellee proceeded to trial alleging that she was wrongfully denied a building permit by the City of Gadsden. That decision was clearly a matter of administrative discretion. If she wished to contest that denial, she should have filed an appeal to the Housing and Building Board of Adjustments and Appeals, *Page 834 
allowing that board to hear evidence and reach a factual determination on the issue. If that board reached an adverse decision, she could have then appealed to the Circuit Court of Etowah County pursuant to Code 1975, § 11-52-82. Having failed to exhaust these remedies, she was not entitled to enter a court of law.
Because the appellee failed to exhaust administrative remedies, the Circuit Court of Etowah County lacked jurisdiction to entertain her claim; therefore, the judgment of that court granting appellee's prayer for a permanent injunction is due to be reversed and remanded.
REVERSED AND REMANDED.
TORBERT, C.J., and SHORES and BEATTY, JJ., concur.
JONES, J., concurs in the result.