WRIGHT, Retired Appellate Judge.
On October 26, 1996, the City of Fair-hope issued a building permit to Weezie Brabner and Ernie Brabner, permitting them to alter and expand a building that does not conform to the requirements of the City’s zoning ordinance. Edwina S. Hamilton, individually, and as trustee of the Edwina S. Hamilton Inter Vivos Trust, and Harold E. Hamilton, the adjoining property owners, appealed the issuance of the permit to the Board of Adjustments and Appeals for the City of Fairhope, alleging that the issuance of the building permit violated the provisions of the zoning ordinance. On December 16, 1996, the Board conducted a hearing on the appeal; however, the Board did not vote to affirm or to reverse the issuance of the building permit. Shortly thereafter, the Brabners began construction on the garage.
On December 30, 1996, the Hamiltons filed a complaint in the Baldwin County Circuit Court against the City of Fairhope and the Board. The Hamiltons requested that the trial court determine that the issuance of the building permit violated the provisions of the zoning ordinance and that the building permit was illegal and void. They also requested that the trial court stay construction pending a final decision and grant them other different relief which the court deemed appropriate. On January 22, 1997, the trial court entered a temporary order, staying any construction pending further orders of the court. The same day, Weezie Brabner filed a motion to intervene, which the trial court granted. Weezie B. Brabner and Ernie Brabner filed a complaint in intervention, requesting that the trial court declare that they had obtained an easement over the Hamil-tons’ property and requesting that the court award them court costs.
Following oral proceedings, the trial court entered a judgment on October 31, 1997, stating, in pertinent part, as follows:
“1. Two expert witnesses testified to directly opposite opinions over the meaning of the portion of the zoning ordinance in question. While the court personally favors the interpretation of the statute given by the City of Mobile’s *32 zoning officer, the court is of the opinion that the law does not allow the court to substitute its judgment for the Board of Adjustments in the City of Fairhope. The court is of the opinion that the interpretation is fairly subject to debate, and the interpretation taken by the Board of Adjustments is due to be affirmed.”
The trial court denied all requests for an attorney fee and entered a judgment in favor of the City and the Board. On December 1, 1997, the trial court amended its October 31, 1997, judgment, denying all other claims for relief not specifically addressed.
The Hamiltons appeal, contending that the trial court erred in deferring to the zoning officer’s interpretation of the applicable provisions of the zoning ordinance.
The record reveals the following pertinent facts: In 1975 the City enacted a zoning ordinance. In 1976 the Hamiltons purchased a house and property in Fair-hope, Alabama, which they have used as a rental home. Shortly thereafter, the Brabners purchased the adjoining property, which had a garage located within 10 inches of the property line between the Hamiltons’ and the Brabners’ properties. The garage was a non-conforming building under the 1975 zoning ordinance, because it violated the “side yard requirement,” which was, and is, five feet.
In 1986 Weezie Brabner noticed extensive termite damage to the garage and applied for a building permit to replace the garage: The City granted Weezie Brab-ner’s request and issued her a building permit to replace the garage. It does not appear that the Hamiltons received notice of Weezie Brabner’s application for a building permit. Weezie Brabner rebuilt the garage; however, she built a wall where the garage door had been and dug up the driveway. The Brabners have not used the garage as a garage since 1986.
In 1989 the Brabners requested a variance from the Board to expand the rebuilt garage. The City notified the Hamiltons of the Brabners’ request. The Hamiltons objected to the variance request. After a hearing the Board denied the Brabners’ request. In 1996 Weezie Brabner applied for another building permit to add a second story to the garage, to be used as an art studio. The City notified the Hamil-tons, who objected to the expansion. Bob Lunsford, the City’s zoning officer, reviewed the applicable provisions of the zoning ordinance, which provide as follows:
“4.4 Norir-Conformance.
“4.41 Non-Conforming Building ' and Uses: It is the intent of this ordinance to recognize that the elimination of existing buildings and structures or uses that are not in conformance with the provisions of this ordinance is as much a subject of health, safety and general welfare as is the prevention of the establishment of new uses that would violate the provisions of this ordinance. It is also the intent of this ordinance to administer the elimination of non-conforming uses, buildings, and structures so as to avoid any unreasonable invasion of established private property rights. Therefore, any structure or use of land existing at the time of the enactment of this ordinance, and amendments thereto, not in conformity with the use relations and provisions, may be continued subject to the following provisions:
“4.411 Alterations: Any change in a non-conforming building site or yard area is subject to the following:
“A non-conforming building can be structurally altered or expanded provided that such alterations or expansions are in conformance with the side, front and rear yard requirements and with the height requirements of the district.
“4.412 Extension: A non-conforming use of land shall be restricted to the lot occupied by such use as of the effective date of this ordinance. A non-conforming use of a building or buildings shall not be extended to include either addi *33 tional buildings or land after the effective date of this ordinance.”
Thereafter, Lunsford issued a building permit to Weezie Brabner. The Hamil-tons appealed the issuance of the building permit to the Board, which conducted a hearing. The issue presented to the Board was whether Lunsford correctly interpreted §§ 4.41, 4.411, and 4.412 in granting a building permit to expand the Brabners’ non-conforming building. However, the Board did not vote to affirm or to reverse the issuance of the building permit.
Lunsford testified that the alteration of the garage, by adding height, did not expand the existing non-conforming use, because the alteration did not increase the “side yard requirement” non-conformity. Lunsford admitted that the garage was set back only 10 inches from the side property line, and not the five feet required by the zoning ordinance. He stated that the garage met the front and rear yard requirements and the height requirements. Lunsford testified that, although the garage did not conform to the “side yard requirement,” he issued the building permit because:
“from the understanding I had gained from speaking with [the Brabners’ attorney] about this, and other reasons also, I felt that the zoning ordinance that is in effect today, I know that it came into being in August 1975. This slab had been there much longer than that. And I did not feel that in reviewing this permit for issue or non-issue, I would be able to take this ordinance and apply it retroactively to existing non-conformity”
He also stated that, in his opinion, the nonconformity was not expanded. However, Weezie Brabner admitted that the garage was expanded to include an area that was once a greenhouse, although that expansion was not listed on her application for a building permit. She admitted that the building was now approximately six feet longer than it was originally, as well as two stories high.
The City and the Board argue that the Hamiltons’ appeal is due to be dismissed because, they say, since the Board did not vote to affirm or to reverse the grant of the building permit, there was no final decision to appeal from to the trial court.
In City of Daphne v. Dolan, 603 So.2d 1042 (Ala.Civ.App.1991), this court stated the exceptions to the “exhaustion doctrine.” This court held as follows:
“Generally, a party seeking relief under zoning laws must first exhaust this method of ‘administrative’ appeal before seeking relief in a court of law. City of Gadsden v. Entrekin, 387 So.2d 829 (Ala.1980). However, the ‘exhaustion doctrine’ does not apply when the issue to be decided by the court is solely an issue of law and is not dependent upon disputed facts, such as where the constitutionality or applicability of an ordinance is challenged, Dawson v. Cole, 485 So.2d 1164 (Ala.Civ.App.1986), or when the petitioner alleges a threat of irreparable injury. Entrekin. The issues that fall within these exceptions, though collateral to the board of adjustment’s determination, cannot be decided by the board because it is not authorized to decide issues of law. [City of Homewood v.] Caffee [, 400 So.2d 375 (Ala.1981) ]. These issues may be raised for the first time before the trial court, which exercises its general jurisdiction over them. Ex parte Averyt, 487 So.2d 912 (Ala.1986).”
Dolan, 603 So.2d at 1044. Construction of a zoning ordinance is a question of law. Ex parte Norwood, 615 So.2d 1210 (Ala.Civ.App.1992) (citation omitted). Therefore, we conclude that the trial court had subject matter jurisdiction over the Hamil-tons’ complaint.
The trial court used the “fairly debatable” standard in deferring to Luns-ford’s interpretation of the ordinance in *34 entering a judgment in the City’s favor. The Hamiltons argue that the “fairly debatable” standard does not apply to decisions of the Board or of the zoning officer. Our supreme court has held that the “fairly debatable” standard applies when a municipality acts in a legislative capacity, and not in an administrative capacity. Ryan v. City of Bay Minette, 667 So.2d 41 (Ala.1995). Therefore, we conclude that the trial court erred in deferring to Lunsford’s interpretation of the zoning ordinance.
Our supreme court has held as follows:
“The fundamental rule of statutory construction is to ascertain and give effect to the intent of the legislature in enacting the statute. Words used in a statute must be given their natural, plain, ordinary, and commonly understood meaning, and where plain language is used a court is bound to interpret that language to mean exactly what it says. If the language of the statute is unambiguous, then there is no room for judicial construction and the clearly expressed intent of the legislature must be given effect. Tuscaloosa County Comm’n v. Deputy Sheriffs’ Ass’n of Tuscaloosa County, 589 So.2d 687 (Ala.1991).”
IMED Corp. v. Systems Engineering Assocs. Corp., 602 So.2d 344, 346 (Ala.1992). This rule is also used to construe ordinances. Ex parte Norwood, supra.
The language of § 4.411 is plain; it requires the owner of a non-conforming building to comply with the side, front, and rear yard requirements and with the height requirements before a non-conforming building can be structurally altered or expanded. Moreover, § 4.412 forbids the extension of a non-conforming building to include additional buildings or land. After carefully reviewing the applicable provisions of the zoning ordinance, we conclude that the City’s issuance of a building permit to Weezie Brabner was in violation of §§ 4.411 and 4.412; therefore, the trial court erred in entering a judgment in the City and the Board’s favor.
Accordingly, we reverse the judgment of the trial court and remand this case for further proceedings.
The foregoing opinion was prepared by Retired Appellate Judge L. Charles Wright while serving on active duty status as a judge of this court under the provisions of § 12-18-10(e), Ala.Code 1975.
REVERSED AND REMANDED.
ROBERTSON, P.J., and CRAWLEY and THOMPSON, JJ., concur.
YATES and MONROE, JJ., dissent.