[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 156 
The plaintiff, Budget Inn of Daphne, Inc. ("Budget Inn"), appeals from a summary judgment entered for the defendants City of Daphne and the Planning Commission of the City of Daphne (collectively, "Daphne"). We reverse and remand.
 I. Factual Background
This is a zoning case. Daphne adopted a "Land Use and Development Ordinance" in 1987. The following year, Daphne annexed the property on which Budget Inn operates a motel. The parties agree that the sign at the Budget Inn motel was a legal sign when the ordinance became applicable to the Budget Inn property, even though the sign did not conform to the height and size requirements imposed by the ordinance. Thus, it was considered a "legal-nonconforming" sign. Daphne *Page 157 
amended various sections of its zoning ordinance in 1994. Included in the changes was the addition of § 10.722, which read:
 "Where a change in 1) use of property, 2) occupancy, 3) ownership regardless of name change, 4) change in name regardless of ownership, 5) location, 6) the alteration of a sign in any manner, the altered or changed sign shall be in conformance with the requirements of this Ordinance and shall lose its eligibility for characterization as a `Legal Non-conforming Sign' under Section 10.728."
The ordinance further requires that if a sign loses its "legal-nonconforming" status then the owner of the sign must remove it or bring it into compliance within 180 days. § 10.729.
In November 1996, Chase Manhattan Bank (formerly known as Chemical Bank) became the owner of the motel property, through foreclosure. A hotel-management company received a business license from Daphne and continued to operate the property as a motel. One year later, Budget Inn of Daphne, Inc., purchased the property. In December 1997, Daphne notified Budget Inn that the city considered the sign on the property to be a nonconforming sign and considered that the change in ownership of the property terminated the "grandfathering" of the sign and its "legal-nonconforming" status.
Budget Inn sued Daphne in the United States District Court for the Southern District of Alabama, alleging various theories challenging the constitutionality of the ordinance. The court dismissed the action for a lack of "ripeness," i.e., on the basis that the action was premature. Budget Inn later filed this present action in the Baldwin Circuit Court. That court granted Daphne's motion for summary judgment and denied Budget Inn's cross motion for summary judgment. Budget Inn appeals from the resulting final judgment.
 II. Jurisdictional Issues
Daphne argues that the Baldwin Circuit Court did not have jurisdiction to hear the case because, it claims, Budget Inn had administrative remedies it had not pursued. Specifically, Daphne argues that Budget Inn had not applied for a variance from the Board of Zoning Adjustment, but rather had rushed to the courthouse, contrary to the applicable law, which Daphne says requires Budget Inn to first exhaust its administrative remedies.
It is well settled in Alabama that the general principle of "exhaustion of administrative remedies" applies to zoning matters. City of Gadsdenv. Entrekin, 387 So.2d 829, 833 (Ala. 1980) (holding that "one must exhaust his remedies in a zoning matter before entering a court of law."); Watson v. Norris, 283 Ala. 380, 217 So.2d 246 (1968). However, exhaustion of administrative remedies is a judicially imposed prudential limitation, not an issue of subject-matter jurisdiction. Furthermore, we recognize certain exceptions exist to the general rule of exhaustion of administrative remedies:
 "The doctrine does not apply when (1) the question raised is one of interpretation of a statute, (2) the action raises only questions of law and not matters requiring administrative discretion or an administrative finding of fact, (3) the exhaustion of administrative remedies would be futile and/or the available remedy is inadequate, or (4) where there is the threat of irreparable injury."
Ex parte Lake Forest Property Owners' Ass'n, 603 So.2d 1045, 1046-47
(Ala. 1992) (citing City of Gadsden v. Entrekin, supra).
One who raises only questions of law need not exhaust administrative remedies, and one challenging the constitutionality of a zoning ordinance is raising a *Page 158 
question of law. A zoning board of adjustment or other such administrative agency cannot entertain a constitutional challenge and would be without authority or power to make a determinative ruling on such a challenge. See City of Homewood v. Caffee, 400 So.2d 375,378 (Ala. 1981); Reed v. City of Hoover, 695 So.2d 34, 36 (Ala.Civ.App. 1997); Beaird v. City of Hokes Bluff, 595 So.2d 903, 904 (Ala.Civ.App. 1992). This is not to suggest that every party with a zoning dispute can transform it into a constitutional question and thereby bypass the established administrative process. However, when the administrative body is without power to redress the harm complained of, then we cannot require the complaining party to participate in a futile process. In the present case, the parties agree upon all of the relevant facts. The only substantive matter in dispute is the constitutionality of certain provisions of Daphne's zoning ordinance. This is purely a matter of law; thus, jurisdiction properly lies in the courts and the defense of failure to exhaust administrative remedies does not apply.
Daphne also asks this Court to declare that Budget Inn's claim is "unripe," i.e., not presently justiciable, under the justiciability principles enunciated in Williamson County Regional Planning Commissionv. Hamilton Bank of Johnson City, 473 U.S. 172 (1985). However,Williamson is inapposite to this case. In Williamson, the Supreme Court held that a property owner could not bring a claim in a federal court for a violation of the Just Compensation Clause of the United States Constitution until the property owner had followed state procedures for redress and redress had been denied. Id. at 195. Williamson does not apply to the present case, because Budget Inn presents a claim that Daphne's zoning ordinance is facially unconstitutional.
 III. Validity of the Zoning Ordinance
This Court recognizes that a municipality may establish a comprehensive land-use plan and effectuate that plan through a scheme of comprehensive zoning regulations. This Court affords deference to a municipal zoning ordinance, which is the product of a municipality's legislative function, and will review it only to determine if it is arbitrary or capricious. See Homewood Citizens Ass'n v. City of Homewood,548 So.2d 142, 143 (Ala. 1989); Swann v. Board of Zoning Adjustment ofJefferson County, 459 So.2d 896, 899 (Ala.Civ.App. 1984) (holding that "local authorities may not, under the guise of legislative power, impose restrictions that arbitrarily and capriciously inhibit the use of private property or the pursuit of lawful activities") (quoting City of Birminghamv. Morris, 396 So.2d 53, 55 (Ala. 1981)). This standard of review reflects the majority view that zoning matters are essentially local in nature and are best addressed at a local level. Homewood Citizens Ass'nv. City of Homewood, 548 So.2d at 143. However, this deferential standard of review does not make this Court oblivious to constitutional concerns.
 "[T]he presumption of a zoning ordinance's validity must be tempered by the Court's appreciation of the fact that zoning involves governmental restrictions upon a property owner's constitutionally guaranteed
right to use his or her property, unfettered by governmental restrictions, except where the use violates any law, the use creates a nuisance, or the owner violates any covenant, restriction or easement."
PA Northwestern Distrib., Inc. v. Zoning Hearing Bd. of the Township ofMoon, 526 Pa. 186, 191, 584 A.2d 1372, 1374 (Pa. 1991) (emphasis in original). See, also, Marris v. City of Cedarburg, 176 Wis.2d 14,33-34, *Page 159 498 N.W.2d 842, 850 (1993) (holding that courts must balance interests of property owners with those of municipality).
The parties agree that Budget Inn's sign was, at least initially, a legal-nonconforming use, grandfathered under the zoning ordinance. However, after the most recent change in ownership of the motel facilities, Daphne claimed the sign lost its "legal-nonconforming" status, citing the provision of the ordinance stating that a sign will lose that status upon a change in "ownership regardless of name change" or "change in name regardless of ownership." § 10.722.
We find these provisions in Daphne's ordinance arbitrary and capricious. This Court has acknowledged that a municipality, acting through a zoning ordinance, may pursue the objective of reducing gradually, and then eventually eliminating entirely, certain uses of property within certain areas. See City of Foley v. McLeod, 709 So.2d 471,473 (Ala. 1998); Moore v. Pettus, 260 Ala. 616, 627 71 So.2d 814, 823
(1954). The reason a municipality enacts a zoning ordinance pursuant to a comprehensive plan is to create a planned consistency in land-use patterns. However, an existing nonconforming use is a vested property right that a zoning ordinance may not abrogate except under limited circumstances. The general rule is that a mere change in legal ownership or operating name is not one of those circumstances.
 "The right to maintain a nonconforming use does not depend upon ownership or tenancy of the land on which the use is situated. It is not personal to the current owner or tenant but attaches to the land itself. Accordingly, a change in the ownership or tenancy of a nonconforming business or structure does not affect the right to continue the nonconforming use; such right can be exercised equally by the purchaser. . . .
 "A change of ownership of land to which a nonconforming use has attached does not affect the right to such use although the change occurred after the restrictive ordinance became effective. And the right is not forfeited by a purchaser who takes with knowledge of the regulations which are inconsistent with the existing use."
83 Am. Jur. 2d Zoning and Planning § 656 (1992) (internal citations omitted; emphasis added). The rationale for this principle is that our system favors the free alienability of property. Nonpossessory property rights such as covenants and easements are said to "run with the land," becoming an incident of ownership, and they are generally not personal. The same is true of the right to maintain a legal nonconforming use.
 "It is obvious that if the right to continue a nonconforming use were not considered one of the `bundle of rights' which together constitute the attributes of ownership of the land, exercisable by [whoever] had the possessory interest therein, it would prevent a purchaser from using the land for any purpose other than one permitted by the ordinance in effect at the time of transfer. The owner of the land would be unable to sell all of his rights in the land and in the use thereof, and, being out of possession of the land, could not exercise the right to the nonconforming use."
4 Rathkopf's The Law of Zoning and Planning, § 51.03 (1994). A municipality may not simply divest a property owner of a vested right, without compensation, and any attempt to do so violates the most fundamental principles of due process. A purchaser cannot have a single strand of his "bundle of rights" confiscated by the municipality simply because there has *Page 160 
been a legal conveyance. By the strict terms of Daphne's ordinance, property designated as "nonconforming" would lose its protected legal status simply because it passes to an heir, devisee, legatee, or mortgagee — because such a transfer would represent a "change in ownership." This construction, the only one allowed by the unambiguous language of the statute, imposes constitutionally impermissible limitations on the use and enjoyment of nonconforming properties and stands against the great weight of legal authority. See, e.g., Keith v. Saco River Corridor Comm'n, 464 A.2d 150 (Me. 1983); Townof Coventry v. Glickman, 429 A.2d 440 (R.I. 1981); Gibbons Reed Co. v.North Salt Lake City, 431 P.2d 559 (Utah 1967); Hawkins v. Talbot,80 N.W.2d 863 (Minn. 1957); O'Connor v. City of Moscow, 69 Idaho 37,202 P.2d 401 (1949); Lewis v. City of Atlantic Beach, 467 So.2d 751
(Fla.Dist.Ct.App. 1985). See generally 4 Rathkopf's The Law of Zoningand Planning § 51.03 n. 1, collecting cases.
This Court will follow the majority rule: A change in the ownership, occupancy, or name of an operating business facility does not eliminate its status as a legal-nonconforming use. If we upheld Daphne's argument, then a municipality could enact a new setback requirement for buildings, so that with a change in tenancy the municipality could assert that the building had become a "nonconforming use" and had to be structurally altered. This Court cannot permit such a potentially dangerous construction of the ordinance.
Daphne's second contention is that Budget Inn's sign lost its "legal-nonconforming" status because the zoning ordinance provides that a sign will lose that status if it is "[altered] . . . in any manner." § 10.722. This language of the ordinance is also arbitrary and capricious. First, we have just held that a change in the ownership of a business facility or a change in the name of the facility does not cause the facility to lose its status as a "legal-nonconforming" use — it is a necessary corollary of that holding that a change made in a sign to reflect a change of name cannot cause the sign to lose its "legal-nonconforming" status. Common sense dictates that we allow the new owner of a property to inform the public of the new ownership. See Ray'sStateline Market, Inc. v. Town of Pelham, 140 N.H. 139, 142, 665 A.2d 1068,1070 (1995) (holding that replacing the lettering on existing nonconforming signs would not affect the dimensions of the signs and thus was permissible); Motel 6 Operating Ltd. Partnership v. City ofFlagstaff, 195 Ariz. 569, 573, 991 P.2d 272, 275 (Ct.App. 1999) (holding it is reasonable to update sign to indicate new tenants because such a change does not substantially alter or expand the nonconforming signs);Rogers v. Zoning Bd. of Adjustment of the Village of Ridgewood,309 N.J. Super. 630, 707 A.2d 1090 (App.Div. 1998), aff'd, 726 A.2d 258
(N.J. 1999) (holding that change of sign to indicate new owner of nonconforming building does not cause the sign to lose its protected status).
Second, Daphne's ordinance would appear to prevent an owner from providing ordinary maintenance of a "legal-nonconforming" sign. Public policy dictates that a property owner be allowed to perform routine upkeep on such a sign. The situation before us does not involve a property owner wishing to enlarge, expand, or rebuild his nonconforming use, or a change in the nature and character of the nonconforming use. See, e.g.,Ex parte City of Fairhope, 739 So.2d 35, 39 (Ala. 1999) (holding that a proposed second-story addition to a nonconforming garage would not increase the nonconformity and thus would not violate the zoning ordinance); *Page 161 City of Foley v. McLeod, 709 So.2d 471, 473 (Ala. 1998) (holding that the replacement of six mobile homes in a nonconforming mobile-home park was more than "merely remodeling or repairing a nonconforming structure" and thus violated the ordinance); State ex rel. DauphinStor-All, Inc. v. City of Mobile, 503 So.2d 1224 (Ala. 1987) (holding that because the business of an automobile-parts wholesaler was not substantially the same kind of business as a bakery, the tenant's loss of "legal-nonconforming" status was appropriate, regardless of the relative intensity of the use of the property); Coleman v. Estes,281 Ala. 234, 201 So.2d 391 (1967) (holding that a property owner could not enlarge a junkyard as a nonconforming use subsequent to the passage of the zoning ordinance); Board of Zoning Adjustment for the City ofLanett v. Boykin, 265 Ala. 504, 509, 92 So.2d 906, 909 (1957) (holding "that reflooring 50% of the floor space, reroofing 50% of the dwelling, making separate entrances and installing separate water, heating and lighting systems" would indefinitely prolong the life of the nonconforming building and thus would violate city ordinance).
 IV. Budget Inn's Estoppel Argument
Budget Inn further raises an estoppel issue, claiming that Daphne had failed to enforce its zoning ordinance after a previous change in ownership of the subject property and thus cannot now enforce it against Budget Inn. Because we have held that the disputed terms of the zoning ordinance are unconstitutional and thus cannot be enforced, we need not consider the estoppel issue.
 V. Conclusion
The sections of Daphne's zoning ordinance that Budget Inn has challenged are unconstitutional and may not be enforced against Budget Inn or any other property owner. Therefore, the judgment of the circuit court is reversed.
REVERSED AND REMANDED.
Hooper, C.J., and Maddox, Cook, and Johnstone, JJ., concur.