On Application for Rehearing
 

 BRYAN, Judge.
 

 The opinion of October 2, 2009, is withdrawn, and the following is substituted therefor.
 

 
 *124
 
 The Baldwin County Planning and Zoning Commission (“the Commission”) appeals a judgment entered by the Baldwin Circuit Court (“the circuit court”) insofar as it (1) declared certain provisions of the Baldwin County Subdivision Regulations (“the Subdivision Regulations”) to be void and unenforceable and (2) issued a writ of mandamus compelling the Commission to approve a preliminary plat (“the plat”) submitted to the Commission in November 2007 by Montrose Ecor Rouge, L.L.C. (“the developer”). The developer cross-appeals the circuit court’s judgment insofar as it denied the developer’s claim seeking an award of damages against the Commission for disapproving the plat. We affirm as to the Commission’s appeal; we reverse and remand as to the developer’s cross-appeal.
 

 The developer owns a 7.98-acre parcel of land in the Montrose area of Baldwin County (“the developer’s parcel”). The western boundary of the developer’s parcel fronts on Mobile Bay. The plat proposed to subdivide the developer’s parcel into eight residential lots, four of which would front on the bay (“the bayfront lots”). The bayfront lots were numbered 1 through 4. The plat proposed to subdivide the most inland portion of the developer’s parcel into two lots numbered 7 and 8 and to subdivide the portion of the developer’s parcel located between the bayfront lots and lots 7 and 8 into two lots numbered 5 and 6. Lots 5 and 6 would include land that is below the face of a bluff (“the bluff’), land that constitutes the face of the bluff, and land that constitutes the top of the bluff.
 

 For purposes of flood insurance, the Federal Emergency Management Agency (“FEMA”) rates the land along the eastern shore of Mobile Bay based on its risk of flooding and exposure to velocity-driven waves in a storm. FEMA has rated a portion of the developer’s parcel as VE, has rated a portion of it as AE, and has rated a portion of it as X. The portion of the developer’s parcel that is rated VE is coastal land that is subject to a high risk of flooding and is also subject to velocity-driven waves in a storm. The plat would place the bayfront lots and the portion of lots 5 and 6 closest to the bay in the portion of the developer’s parcel rated VE. The portion of the developer’s parcel that is rated AE is subject to a high risk of flooding but is not subject to velocity-driven waves in a storm. The plat would place portions of lots 5 and 6 in the portion of the developer’s parcel rated AE. The portion of the developer’s parcel that is rated X is neither subject to a high risk of flooding nor subject to velocity-driven waves in a storm. The plat would place portions of lots 5 and 6 and lots 7 and 8 in the portion of the developer’s parcel rated X.
 

 The FEMA ratings for the developer’s parcel are typical of the FEMA ratings for the eastern shore of Mobile Bay as a whole. FEMA regulations do not prohibit residential construction in areas rated VE or AE; however, they do impose special requirements on residential construction in such areas.
 

 The plat showed that two areas of wetlands are located on the developer’s parcel and that the subdivision would be configured so that most of the wetlands would be in common areas that are outside the eight residential lots. The plat also showed that a historic pottery kiln (“the kiln”) is located on the developer’s parcel in an area that would be platted as part of lot 5.
 

 The Commission considered the plat at a public meeting on January 17, 2008. Although the permit engineer for Baldwin County, who had reviewed the plat on behalf of the Commission, reported that the plat complied with all the technical
 
 *125
 
 requirements of the Subdivision Regulations, the Commission denied approval of the plat on four grounds. First, according to the Commission, the plat did not comply with § 1.2.2 of the Subdivision Regulations insofar as that section provides that “[l]and to be subdivided shall be of such character that it can be used safely for building purposes without danger to health or peril from fire, flood, or other menace.” Second, according to the Commission, the plat did not comply with § 4.4.5(g) of the Subdivision Regulations, which provides that a preliminary plat shall show “[w]ooded areas, wetlands, and any other conditions affecting the site,” because, the Commission said, the plat did not show the kiln. Third, according to the Commission, the plat did not comply with § 5.1(d) of the Subdivision Regulations, which provides that a plat shall comply with “[t]he standards and regulations adopted by all boards, commissions, agencies, and officials of Baldwin County,” because, the Commission said, the plat “conflicted with the goals of the Flood Hazard Management Plan for Baldwin County which is to prevent inappropriate land development in flood hazard areas.” Fourth, according to the Commission, the plat did not comply with § 5.2.2 of the Subdivision Regulations insofar as that section prohibits the subdivision or development of “[l]and which [the Commission] finds to be unsuitable for subdivision or development due to flooding, improper drainage, steep slopes, rock formations, adverse soil conditions or topography, utility easements or other features which will reasonably be harmful to the safety, health and welfare of the present and future inhabitants of the subdivision and/or its surrounding areas,” because, the Commission said, the bayfront lots would be located in “an area prone to severe flooding” and lot 6 would be dominated by the steep slope of the bluff.
 

 On February 4, 2008, the developer sued the Commission in the circuit court, seeking a judgment (1) declaring that the portions of §§ 1.2.2, 5.1, and 5.2.2 upon which the Commission had relied in disapproving the plat (“the challenged portions of the Subdivision Regulations) were void because they were impermissibly vague and, therefore, were outside the authority of the Commission to regulate subdivisions; (2) issuing a writ of mandamus compelling the Commission to approve the plat; and (3) awarding the developer damages for the Commission’s wrongfully disapproving the plat. Answering, the Commission denied that the challenged portions of the Subdivision Regulations were impermissi-bly vague or outside the Commission’s authority to regulate subdivisions, denied that the developer was entitled to approval of the plat, and denied that the developer was entitled to any of the relief it sought.
 
 [1]
 
 Following a bench trial at which it received evidence ore tenus, the circuit court entered a judgment declaring that the challenged portions of the Subdivision Regulations were void because they were impermissibly vague and, therefore, were outside the Commission’s authority to regulate subdivisions; issuing a writ of mandamus compelling the Commission to approve the plat; and denying the developer an award of damages. In pertinent part, the circuit court’s judgment stated:
 

 “1. The Court finds from the evidence that with the exception of Sections 1.2.2, 5.1 and 5.2.2 of the Subdivision Regulations (discussed in paragraph 8 below), the proposed preliminary plat of Montrose Ecor Rouge Subdivision con
 
 *126
 
 sidered and denied by the Baldwin County Planning and Zoning Commission on January 17, 2008 met each and every requirement imposed by the Baldwin County Subdivision Regulations in effect at the time. In addition to being in compliance with the Subdivision Regulations, the Court finds that the subject plat was also in compliance with all other applicable laws, rules, regulations and ordinances.
 

 2. Despite [the Commission’s] arguments to the contrary, the Court finds that the Baldwin County Commission has adopted no regulations which prohibit the subdivision of land in flood-prone areas. While it is true that the existing Subdivision Regulations purport to have been adopted pursuant to the enabling authority granted by Ala.Code [1975,] §§ 11-19-1, et seq., the regulations themselves contain no subdivision rules which apply specifically to flood-prone areas as opposed to any other unincorporated areas of Baldwin County. Moreover, the Subdivision Regulations themselves contain provisions which expressly allow the subdivision and development of lands in flood-prone areas.
 
 See
 
 Subdivision Regulations § 5.2.2 (last paragraph) (allowing the subdivision of lands in areas ‘subject to flood’ provided that FEMA building regulations are followed).
 
 See also
 
 Subdivision Regulations § 5.3.18 (allowing streets to be constructed in flood-prone areas so long as no portion thereof is more than two feet below base flood elevation). Likewise, the Baldwin County Flood Damage Prevention Ordinance expressly permits the subdivision of lands in flood-prone areas. For these reasons, the Court finds that [the Commission’s] denial of the preliminary plat application due to its location in a flood-prone area was arbitrary and capricious, and contrary to the express provisions of the Subdivision Regulations in effect at the time.
 

 “3. The Court finds that certain portions of Sections 1.2.2, 5.1 and 5.2.2 of the Baldwin County Subdivision Regulations adopted January 1, 2007 (those sections on which [the Commission] relied in voting to deny the application) contain language which is impermissibly vague and incapable of precise determination by a developer or property owner. The provisions of each section which the Court finds to be impermissibly vague are as follows:
 

 “a. Section 1.2.2 — ‘Land to be subdivided shall be of such character that it can be used safely for building purposes without danger to health or peril from fire, flood, or other menace.’
 

 “b. Section 5.1 — ‘The following planning and [sic] standards shall be complied with, and no higher standard may be required by the County Commission, except where, because of exceptional and unique conditions of topography, location, shape, size, drainage, wetlands or other physical features of the site, minimum standards specified herein would not reasonably protect or provide for public heath, safely, or welfare.’
 

 “c. Section 5.2.2 — ‘Land which the County Planning Commission finds to be unsuitable for subdivision or development due to flooding, improper drainage, steep slopes, rock formations, adverse soil formations or topography, utility easements, or other features which will reasonably be harmful to the safety, health and general welfare of the present or future inhabitants of the subdivision and/or its surrounding areas, shall not be subdivided or developed unless adequate methods are formulated by the applicant and approved by the County
 
 *127
 
 Planning Commission, upon recommendation of the County Engineer, or his/her designee, to solve the problems created by the unsuitable land conditions; otherwise such land shall be set aside for uses as shall not involve such a danger.’
 

 “The Court finds that each of the excerpts quoted above fails to comply with the guarantee of ‘comprehensive, reasonably definite and carefully drafted’ subdivision regulations as required by
 
 Smith vs. City of Mobile,
 
 374 So.2d 305 (Ala.1979). The Court further finds that the above quoted provisions are so vague and unspecific that a reasonable property owner or developer could not review those sections and have a clear understanding of what must be done in order to comply. Therefore, the Baldwin County Planning and Zoning Commission was in error to rely on the above quoted provisions as grounds for denying the eight-lot subdivision plat submitted by [the developer] on January 17, 2008. The Court further finds that the above quoted provisions from Sections 1.2.2, 5.1 and 5.2.2 of the Baldwin County Subdivision Regulations are outside of the enabling authority granted pursuant to § 11-24-1, et seq., of the Code of Alabama (1975). Accordingly, the Court declares the above quoted provisions of Sections 1.2.2, 5.1 and 5.2.2 to be void, ineffective and of no force and effect. The Baldwin County Planning and Zoning Commission is hereby RESTRAINED and ENJOINED from applying said provisions to the subject application submitted by [the developer] or to any other applications for subdivision approval considered subsequent to the date of this Order.
 

 “4. The Court further finds from the evidence that [the Commission] erred in denying the proposed plat due to its alleged failure to show (a) wooded areas and marshes pursuant to Subdivision Regulations § 4.4.5(g); and (b) the kiln identified as historic site no. IBA524. Each of those conditions is readily apparent from an examination of the plat, and [the Commission’s] denial of the plat for those reasons was arbitrary and capricious.
 

 “5. Based on the above findings, the Court determines that [the developer’s] Petition for Writ of Mandamus is due to be GRANTED. The Court affirmatively finds that at the meeting of the Baldwin County Planning and Zoning Commission held on January 17, 2008 (a) [the developer] possessed a clear right to the approval of the eight-lot preliminary plat for Montrose Ecor Rouge [subdivision], inasmuch as said application complied with all applicable provisions of the Baldwin County Subdivision Regulations in effect on that date; (b) [the Commission] was under an imperative ministerial duty to approve the subject application, but refused to do so; and (c) because the Baldwin County Planning and Zoning Commission is and was the only governmental authority vested with the jurisdiction to approve the subject application, [the developer] lacks any other adequate remedy. It is hereby ORDERED that Respondent Baldwin County Planning and Zoning Commission immediately approve the preliminary plat application for the eight-lot preliminary subdivision plat submitted by [the developer] (Case No. S-07115), and that the preliminary subdivision plat be executed by the authorized representative of the Baldwin County Planning and Zoning Commission such that [the developer] may proceed with the construction of all improvements necessary to complete said subdivision pursuant to the plat.
 

 
 *128
 
 “6. The Baldwin County Planning and Zoning Commission and its individual members are hereby RESTRAINED and ENJOINED from engaging in any acts which interfere with the implementation of this order or [the developer’s] efforts to complete the subdivision made the basis of this action.
 

 “7. [The developer’s] claim for damages is hereby DENIED.”
 

 (Capitalization in original.)
 

 The Commission timely moved the circuit court, pursuant to Rule 59, Ala. R. Civ. P., to alter, amend, or vacate the judgment; the circuit court denied the Commission’s Rule 59 motion on October 23, 2008. The Commission then timely appealed to the supreme court, and the developer timely cross-appealed to the supreme court. Thereafter, the supreme court determined that the appeal and the cross-appeal were within this court’s appellate jurisdiction and transferred them to this court.
 

 Because the circuit court received evidence ore tenus, our review of its judgment is governed by the following principles:
 

 “1 “ ‘[W]hen a trial court hears ore tenus testimony, its findings on disputed facts are presumed correct and its judgment based on those findings will not be reversed unless the judgment is palpably erroneous or manifestly unjust.’ ” ’
 
 Water Works & Sanitary Sewer Bd. v. Parks,
 
 977 So.2d 440, 443 (Ala.2007) (quoting
 
 Fadalla v. Fadalla,
 
 929 So.2d 429, 433 (Ala.2005), quoting in turn
 
 Philpot v. State,
 
 843 So.2d 122, 125 (Ala. 2002)). ‘ “The presumption of correctness, however, is rebuttable and may be overcome where there is insufficient evidence presented to the trial court to sustain its judgment.” ’
 
 Wattman v. Rowell,
 
 913 So.2d 1083, 1086 (Ala.2005) (quoting
 
 Dennis v. Dobbs,
 
 474 So.2d 77, 79 (Ala.1985)). ‘Additionally, the ore tenus rule does not extend to cloak with a presumption of correctness a trial judge’s conclusions of law or the incorrect application of law to the facts.’
 
 Wattman v. Rowell,
 
 913 So.2d at 1086.”
 

 Retail Developers of Alabama, LLC v. East Gadsden Golf Club, Inc.,
 
 985 So.2d 924, 929 (Ala.2007).
 

 As a threshold matter, the Commission argues that the circuit court lacked jurisdiction over the developer’s action because, the Commission says, the developer failed to exhaust its administrative remedies by appealing to the Baldwin County Board of Adjustment before instituting its action in the circuit court. A planning commission acts in an administrative capacity when it reviews an application for preliminary plat approval for a subdivision.
 
 See Boulder Corp. v. Vann,
 
 345 So.2d 272, 275 (Ala.1977) (“In exercising its function approving or disapproving any particular subdivision plat, the [Mountain Brook Planning] Commission acts in an administrative capacity.”). Although a party aggrieved by the decision of a governmental entity acting in an administrative capacity must generally exhaust his or her administrative remedies before seeking relief in an Alabama court, the Alabama courts recognize certain exceptions:
 

 “[W]e recognize certain exceptions exist to the general rule of exhaustion of administrative remedies:
 

 “ ‘The doctrine does not apply when (1) the question raised is one of interpretation of a statute, (2) the action raises only questions of law and not matters requiring administrative discretion or an administrative finding of fact, (3) the exhaustion of administrative remedies would be futile and/or the available remedy is inadequate, or (4) where there is the threat of irreparable injury.’
 

 
 *129
 

 “Ex parte Lake Forest Property Owners’ Ass’n,
 
 603 So.2d 1045, 1046-47 (Ala.1992) (citing
 
 City of Gadsden v. Entrekin,
 
 [387 So.2d 829 (Ala.1980) ]).
 

 “One who raises only questions of law need not exhaust administrative remedies, and one challenging the constitutionality of a zoning ordinance is raising a question of law. A zoning board of adjustment or other such administrative agency cannot entertain a constitutional challenge and would be without authority or power to make a determinative ruling on such a challenge. See
 
 City of Homewood v. Caffee,
 
 400 So.2d 375, 378 (Ala.1981);
 
 Reed v. City of Hoover,
 
 695 So.2d 34, 36 (Ala.Civ.App.1996);
 
 Beaird v. City of Hokes Bluff,
 
 595 So.2d 903, 904 (Ala.Civ.App.1992). This is not to suggest that every party with a zoning dispute can transform it into a constitutional question and thereby bypass the established administrative process. However, when the administrative body is without power to redress the harm complained of, then we cannot require the complaining party to participate in a futile process.... ”
 

 Budget Inn of Daphne, Inc. v. City of Daphne,
 
 789 So.2d 154, 157-58 (Ala.2000).
 

 In the case now before us, the developer’s claim that the challenged portions of the Subdivision Regulations were void because they were impermissibly vague presented a challenge to the constitutionality of those regulations.
 
 See Ross Neeley Express, Inc. v. Alabama Dep’t of Envtl. Mgmt.,
 
 437 So.2d 82, 84 (Ala.1983) (“The right to due process is guaranteed to the citizens of Alabama under the Alabama Constitution of 1901, Article 1, Sections 6 and 13. This constitutional right to due process applies in civil actions as well as criminal proceedings.
 
 Pike v. Southern Bell Telephone and Telegraph Co.,
 
 263 Ala. 59, 81 So.2d 254 (1955). The courts have found that this right is violated when a statute or regulation is unduly vague, unreasonable, or overbroad.”). Therefore, the developer was not required to exhaust its administrative remedies before instituting its action in the circuit court.
 
 See Budget Inn of Daphne, Inc. v. City of Daphne,
 
 supra.
 

 With regard to the merits of the circuit court’s judgment, the Commission first argues that the circuit court erred because, the Commission says, the circuit court did not apply the correct standard of review in reviewing the Commission’s decision to disapprove the plat. When a circuit court reviews a decision of a planning commission regarding a subdivision plat, the circuit court’s standard of review requires it to determine whether the planning commission’s decision “ ‘was arbitrary or capricious or was not made in compliance with applicable law.’ ”
 
 Mobile City Planning Comm’n v. Stanley,
 
 775 So.2d 226, 228 (Ala.Civ.App.2000) (quoting
 
 Ex parte City of Fairhope,
 
 739 So.2d 35, 38 (Ala.1999)). In the case now before us, a fair reading of the circuit court’s judgment indicates that the circuit court reviewed the Commission’s decision disapproving the plat to determine whether the Commission’s decision was arbitrary and capricious or was not made in compliance with applicable law; therefore, we find no merit in the Commission’s argument that the circuit court did not apply the correct standard of review.
 

 The Commission next argues that the circuit court erred because, the Commission says, the circuit court made a factual finding that the Commission had disapproved the plat on the ground that a portion of the proposed subdivision would be in a “flood-prone” area — according to the Commission, such a factual finding is erroneous because the Commission actually disapproved the plat because that portion
 
 *130
 
 of the proposed subdivision would be in an area that is subject to “severe flooding” rather than an area that is merely “flood-prone.” However, we do not read the circuit court’s judgment as making such a factual finding. Rather, we read the circuit court’s judgment as stating that the Subdivision Regulations do not specifically prohibit the subdivision of land that is subject to flooding regardless of the severity of the flooding. Therefore, we find no merit in the Commission’s argument that the circuit court made an erroneous factual finding that the Commission had disapproved the plat because portions of the proposed subdivision would be in a “flood-prone” area as opposed to an area that is subject to severe flooding.
 

 The Commission next argues that the circuit court erred insofar as it concluded that the challenged portions of the Subdivision Regulations were outside the authority of the Commission to regulate subdivisions. The circuit court determined that the challenged portions of the Subdivision Regulations were outside the authority of the Commission to regulate subdivisions because they were impermissibly vague. Therefore, the issue is whether the challenged portions of the Subdivision Regulations are impermissibly vague.
 

 Neither the Commission nor the developer has cited any Alabama authority squarely addressing the issue whether the challenged portions of the Subdivision Regulations are impermissibly vague. In
 
 Smith v. City of Mobile,
 
 874 So.2d 305 (Ala.1979), the supreme court stated:
 

 “Regulations enacted by the planning commission must be of general application and
 
 set forth sufficient standards to give applicants notice of what is required of them.
 
 Powell,
 
 Law of Real Property,
 
 Chapter 79, ‘Subdivision Control,’ 866....
 

 [[Image here]]
 

 “The Supreme Judicial Court of Massachusetts has likewise stated:
 

 “ ‘... The subdivision control law attaches such importance to planning board regulations as to indicate to us that they should be comprehensive,
 
 reasonably definite,
 
 and carefully drafted, so that owners may know in advance what is or may be required of them and what standards and procedures will be applied to them. Without such regulations, the purposes of the law may easily be frustrated.
 

 “ ‘... [These] regulations deal with the matters here in issue in terms ... too vague and general to inform owners about the standards which they must meet....’ (Emphasis Added)
 
 Castle Estates, Inc. v. Park & Planning Board of Medfield,
 
 344 Mass. 329, 182 N.E.2d 540, 545, 545 (1962).
 

 “Similarly, [E.C.] Yokley,
 
 [The Law of Subdivisions
 
 ], § 54 (Supp.1979), states:
 

 “ “Where a subdivision plan is disapproved, valid reasons must be given for such action. Where reasons for disapproving a subdivision plan, or a development plan, are vague and uncertain in meaning, and provide no information to a developer to enable him to know wherein the plan failed to meet the requirements of the regulations, it has been held that such action operates to deprive a developer of his property without due process of law. If a plan fails in any respect to conform to the regulations it becomes the duty and obligation of the approving authority to so indicate. A city council, vested with authority to approve a plan, may not disregard the regulations and
 
 substitute its pure discretion for a discretion controlled by fixed standards applying to all cases of a like nature.’
 
 Citing
 
 RK Dev.
 
 
 *131
 

 Corp. v. Norwalk,
 
 156 Conn. 369, 242 A.2d 781 (1968).”
 

 374 So.2d at 308-09 (first and last emphasis added).
 

 The supreme court indicated in
 
 Smith v. City of Mobile
 
 that subdivision regulations must be reasonably definite and fixed in their requirements to ensure that they are applied uniformly. The challenged portions of the Subdivision Regulations are not reasonably definite and fixed in their requirements; to the contrary, they accord the Commission the discretion to treat similarly situated landowners differently. Accordingly, we conclude that they are void because they are impermissibly vague.
 
 See Smith v. City of Mobile.
 
 Therefore, we affirm the circuit court’s judgment insofar as it determined that the challenged portions of the Subdivision Regulations were void and unenforceable because they were impermissibly vague.
 

 The Commission next argues that its disapproving the plat should have been upheld by the circuit court because, the Commission says, (1) the developer failed to apply to the Baldwin County Historical Development Commission for certification that development of the developer’s parcel was appropriate in light of the presence of the kiln on the developer’s parcel and (2) § 5.1.1(d) of the Subdivision Regulations requires an applicant seeking approval of a preliminary subdivision plat to comply with “[t]he standard [sic] and regulations adopted by all boards, commissions, agencies, and officials of Baldwin County,” which would include the regulations of the Baldwin County Historical Commission. However, we cannot reverse the circuit court’s judgment on the basis of this argument because the Commission did not present it to the circuit court.
 
 See Smith v. Equifax Servs., Inc.,
 
 537 So.2d 463, 465 (Ala.1988) (“[T]his Court will not reverse the trial court’s judgment on a ground raised for the first time on appeal_”).
 

 The Commission next argues that the circuit court erred in issuing the writ of mandamus compelling the Commission to approve the plat because, the Commission says, it had the right to deny the plat based upon the Subdivision Regulations. However, we find no merit in this argument because (1) the evidence established that the plat met all the technical requirements of the Subdivision Regulations and (2) the portions of the Subdivision Regulations upon which the Commission relied in disapproving the plat are void because they are impermissibly vague.
 

 Finally, the Commission argues that the circuit court erred (1) in ruling that Jesse Evans III, an attorney called as a witness by the developer, was qualified to testify as an expert regarding whether the plat complied with the Subdivision Regulations and (2) in allowing Evans to testify regarding the ultimate issue in the action. However, Rule 45, Ala. R.App. P., provides, in pertinent part, that
 

 “[n]o judgment may be reversed or set aside ... in any civil ... case on the ground of ... the improper admission or rejection of evidence ... unless in the opinion of the court to which the appeal is taken ..., after an examination of the entire cause, it should appear that the error complained of has probably injuriously affected substantial rights of the parties.”
 

 After a thorough review of the record on appeal, we conclude that, even if the circuit court erred in allowing Evans to testify as an expert and in admitting testimony regarding the ultimate issue in the case, it was harmless error because the circuit court could have correctly determined that the challenged portions of the Subdivision Regulations were impermissibly vague and that the developer was entitled to a writ of
 
 *132
 
 mandamus compelling the Commission to approve the plat without relying on Evans’s testimony.
 

 In the cross-appeal, the developer argues that the circuit court erred in denying the developer’s claim seeking an award of damages against the Commission for its disapproving the plat. The circuit court did not state its rationale for denying that claim. The supreme court’s holding in
 
 Town of Gulf Shores v. Lamar Advertising of Mobile, Inc.,
 
 518 So.2d 1259 (Ala.1987), indicates that there is a legal basis for awarding the developer damages. In that case, the Town of Gulf Shores (“Gulf Shores”) informed Lamar Advertising of Mobile, Inc. (“Lamar”), that it could not build two billboards in the police jurisdiction of Gulf Shores without a building permit and, subsequently, denied Lamar a building permit for the two billboards on the grounds (1) that the billboards would be detrimental to the aesthetics of the area and (2) that the billboards would pose a safety hazard to the public. Lamar sued Gulf Shores, alleging that its denial of a building permit for the billboards was arbitrary and capricious and seeking an injunction enjoining Gulf Shores from interfering with the construction of the billboards and an award of damages. The trial court held, as a matter of law, that Gulf Shores had no legal authority to deny the building permit on the ground that the billboards would be detrimental to the aesthetics of the area; found that there was no merit to Gulf Shores’ contention that the billboards would pose a safety hazard to the public; found that Lamar had a clear right to the issuance of the building permit; found that Gulf Shores’ denial of the building permit was arbitrary and capricious; enjoined Gulf Shores from interfering with the building of the billboards; and denied Lamar’s claim for damages. Gulf Shores appealed to the supreme court insofar as the trial court had ruled in favor of Lamar, and Lamar cross-appealed the trial court’s denial of its claim for damages. The supreme court affirmed the trial court’s judgment insofar as it ruled in favor of Lamar, but it reversed the trial court’s judgment insofar as it denied Lamar’s claim for damages. With respect to Lamar’s claim for damages, the supreme court stated:
 

 “Because Lamar will have suffered damages from the time its construction was stopped by [Gulf Shores] to the time it is allowed to resume construction, we reverse that portion of the judgment that denied Lamar’s claim for damages.”
 

 518 So.2d at 1261.
 

 Accordingly, because the supreme court’s holding in
 
 Town of Gulf Shores v. Lamar Advertising of Mobile, Inc.,
 
 indicates that there is a legal basis for awarding the developer damages in the case now before us, we conclude that the circuit court erred in denying the developer’s claim for damages. Therefore, we reverse that portion of the circuit court’s judgment and remand the action for the circuit court to determine the amount of damages the developer is entitled to recover.
 

 Finally, the developer has objected to our considering a brief that the Commission filed (“the Commission’s brief’), which incorporated both its reply brief in the appeal and its principal brief in the cross-appeal. We will treat the developer’s objection as a motion to strike the Commission’s brief. The developer asserts that the Commission’s brief was subject to the 35-page limitation applicable to a reply brief alone. The Commission, on the other hand, asserts that, because its brief incorporated both its reply brief in the appeal and its principal brief in the cross-appeal, it was entitled to aggregate both the 35-page limitation applicable to
 
 *133
 
 reply briefs and the 70-page limitation applicable to principal briefs.
 

 In pertinent part, Rule 31(a), Ala. R.App. P., provides:
 

 “If the appellee cross appeals (see Rule 4(a)(2)), then the brief of the appel-lee/cross appellant still shall be served and filed within 21 days (3 weeks) after the filing of the appellant’s brief. Within 21 days (3 weeks) of the filing of the appellee/cross appellant’s brief,
 
 the appellant/cross appellee may serve and file a brief responding to the cross appeal and replying to that portion of the ap-pellee’s brief that had responded to the
 
 appeal....”
 

 (Emphasis added.) In pertinent part, Rule 28(j)(4), Ala. R.App. P., provides:
 

 “(4)
 
 Cross-appeals
 
 — page
 
 limitations.
 
 Briefs in cross-appeals shall not exceed the page limitations of subsection (j)(l) ... unless permission to exceed the page limitation is granted pursuant to subsection (j)(3) of this rule.”
 

 In pertinent part, subsection (j)(l) of Rule 28 provides that “[a] principal brief may not exceed 70 pages, and a reply brief may not exceed 35 pages.”
 

 Construing together the portions of the Alabama Rules of Appellate Procedure quoted above, we conclude that, because the Commission’s brief incorporated both its reply brief in the appeal and its principal brief in the cross-appeal, the Commission was entitled to aggregate the page limit applicable to a principal brief and the page limit applicable to a reply brief. Thus, because the Commission’s brief did not exceed 105 pages, the aggregate of the page limits applicable to a principal brief and a reply brief, we deny the developer’s motion to strike the Commission’s brief.
 

 APPLICATION FOR REHEARING GRANTED; OPINION OF OCTOBER 2, 2009, WITHDRAWN; OPINION SUBSTITUTED; APPEAL — AFFIRMED; CROSS-APPEAL — REVERSED AND REMANDED.
 

 PITTMAN, J., concurs.
 

 THOMPSON, P.J., and THOMAS and MOORE, JJ., concur in the result, without writings.
 

 [1]
 

 . Several persons who owned land located in the vicinity of the developer's parcel sought and obtained leave to intervene in order to oppose the developer’s claims. Those interve-nors are not parties to the appeal or the cross-appeal.