MONROE, Judge.
In July 1999, Lamar Advertising Company, Inc. (“Lamar Advertising”), sued the City of Orange Beach Board of Adjustment (“the Board”), challenging the constitutionality of Zoning Ordinance No. 172, which Orange Beach had adopted in April 1991. Lamar Advertising alleged that the ordinance fails to adequately define significant terms; that it is unconstitutionally vague, overbroad, ambiguous, and arbitrary; and that the arbitrary and capricious enforcement of the ordinance deprives Lamar Advertising of its constitutionally protected property rights.
After conducting a trial, the court issued a judgment, denying Lamar Advertising’s request that it declare the ordinance unconstitutional. Lamar Advertising moved to alter, amend, or vacate the judgment. The trial court denied that motion, and Lamar Advertising appealed.
Lamar Advertising owns two outdoor advertising billboard structures (sign number 194 and sign number 195), located in Orange Beach. Both of these signs were erected before Orange Beach adopted the zoning ordinance in 1991. Under the ordinance, both signs were nonconforming signs but were “grandfathered in” under the zoning ordinance. The zoning ordinance stated, in part:
“15.03 DEFINITIONS
“Except as specifically defined herein, each word used in this article has its customary dictionary definition. For purposes of this article, certain words or terms used are herein defined as follows:
[[Image here]]

“Dilapidated Sign

“Any sign which is structurally unsound, has defective parts, or is in need of painting or maintenance.
[[Image here]]

“Nonconforming Sign

“A sign lawfully erected and legally existing at the time of the effective date of an article, but which does not conform to the new provisions of said code.
[[Image here]]
“15.0403 Nonconforming Signs
“a. Any sign erected or existing as of the effective date of this article, which has a valid permit from the City of Orange Beach, but which does not conform to the provisions of this article, or any sign pursuant to Section 15.0402(b), is hereby deemed a nonconforming sign. A nonconforming sign may be maintained only by painting or refinishing the surface of the sign face or sign structure so as to keep the appearance of the sign as it was when the prior permit was issued or the City permit tag affixed. Upon a determination by the administrator and notice to the permit-tee that a nonconforming sign has become dilapidated or structurally unsound, such sign shall be moved within twenty days unless an appeal of such determination has been previously filed with the Board of Adjustment. Any structural or other substantive maintenance to a nonconforming sign shall be deemed an abandonment of the nonconforming sign and shall render the prior permit void and shall result in the reclassification of such sign as an illegal sign pursuant to Section 15.0401.”
(Emphasis in original.)
In the fall of 1998, Hurricane Georges caused the sign face of these two billboards to blow away. A code enforcement officer for the Board sent Lamar Advertising two letters (one in October 1998 regarding sign number 195 and one in January 1999 regarding sign number 194), both of which stated:
*48 “The above-mentioned billboard has been deemed structurally unsound — the sign failed under the winds of Hurricane Georges and exhibits serious pitting and deterioration. This billboard is classified as a nonconforming sign, and when/if it becomes dilapidated or structurally unsound, it must be removed.”
Lamar Advertising appealed the code enforcement officer’s decision to the Board, which denied the appeal and declined to grant a variance to Lamar Advertising. Lamar Advertising appealed the Board’s decision to the circuit court, pursuant to § 11-52-81, Ala.Code 1975. The circuit court denied the appeal. Lamar Advertising appealed to this court, and on April 7, 2000, we affirmed the circuit court’s judgment, without an opinion.[1] See Lamar Adver. Co. v. City of Orange Beach Bd. of Adjustment (No. 2990143) 795 So.2d 850 (Ala.Civ.App.2000) (table).
In July 1999, Lamar Advertising filed the present action, contending that the ordinance was unconstitutional because, it says, the term “structurally unsound” is not defined, and although the term “dilapidated” is defined, it is defined, in part, by the term “structurally unsound.” Lamar Advertising argues that the ordinance fails to provide adequately stated standards, rules, definitions, guidelines, and criteria to ensure that the Board’s officials make consistent decisions to apply and/or enforce the ordinance and that the application of the ordinance is left to the arbitrary will of the Board’s officials.
Lamar Advertising relies upon City of Mobile v. Weinacker, 720 So.2d 953, 955 (Ala.Civ.App.1998), wherein this court agreed with the trial court that a City of Mobile sign ordinance was unconstitutional because it was “impermissibly vague and ambiguous” and because “it provide[d] the review boards unbridled discretion.” In City of Mobile, 720 So.2d at 954-55, this court stated:
“However ‘[i]f a statute or regulation “either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at the meaning and differ as to its application,” it is void for vagueness.’ In addition, ‘ “[s]o far as [an ordinance] restricts the absolute dominion of the owner over its property, it should furnish a uniform rule of action, and its application cannot be left to the arbitrary will of the governing authorities.” ’ ”
(Citations omitted.)
The Board contends that a person of common intelligence would not have to guess at the meaning of Section 15.0403 of the ordinance. The Board says that it is clear that nonconforming signs may be maintained only by painting or refinishing the surface and that no other repairs are allowed. The Board contends that it is clear that when a sign becomes dilapidated *49 or structurally unsound, it must be removed.
After conducting a trial, the court determined that “[t]he significant terms are adequately defined” and that “[a] person of common understanding and knowledge can clearly understand the provisions of the ordinance.” The trial court also determined that “[t]he ordinance is not vague, overbroad, ambiguous, or arbitrary.”
In Ex parte Board of Zoning Adjustment of the City of Mobile, 636 So.2d 415, 417 (Ala.1994), our supreme court stated:
“The judgment of the trial court based on ore tenus evidence in a nonjury case is presumed to be correct; however, that presumption has no application when the trial court is shown to have improperly applied the law to the facts.”
As previously noted, § 15.0403 states, in part:
“Upon a determination by the administrator and notice to the permittee that a nonconforming sign has become dilapidated or structurally unsound, such sign shall be moved within twenty days unless an appeal of such determination has been previously filed with the Board of Adjustment.”
(Emphasis added.) While it is clear that a sign must be moved when it becomes dilapidated or structurally unsound, what constitutes “dilapidated” or “structurally unsound”?
At the trial, that was precisely the question asked Roger Sweppenhiser, who was the Board’s sign administrator/code-enforcement officer in 1995. Sweppenhiser testified that after Hurricane Georges, he observed that the billboards owned by Lamar Advertising had been damaged. He further testified that he brought information and photographs back to the building official, who was his immediate supervisor, and that it was the building official who made the final determination whether a particular sign was structurally unsound or dilapidated. At trial, Sweppenhiser testified:
“Q. [The building official] makes that determination. Did you have any guidelines or criteria or rules or regulations that are set out in this sign ordinance that told you when a sign is structurally unsound or when it is dilapidated?
“A. Not other than the ordinance separates between maintenance as in painting and changing the sign face. That sets it up in one section. And, of course, structurally unsound or structural failure is basically a given in the building industry.
[[Image here]]
“Q. My question to you, Mr. Swep-penhiser: Are there any rules, regulations, criteria, or guidelines to go by in the ordinance which tell you how you determine whether a sign is structurally unsound or dilapidated?
[[Image here]]
“A. Yes.
“Q. And where are they?
“A. The ordinance refers to standard building code for wind loads and referring to the building code, that’s something that we use along with the sign ordinance.
[[Image here]]
“Q. Now, show me in [section 15.0403] or in that sign ordinance where it says structurally unsound that you follow the following guidelines to determine if something is structurally unsound or dilapidated.
“A. The definition of that is: Dilapidated sign: Any sign which is structurally unsound, has defective parts, or is need of painting or maintenance.
[[Image here]]
*50 “A. The section under nonconforming signs, of course we already read that, it says that a nonconforming sign may be maintained only by painting or refinishing surfaces, sign face, or sign structure so as to keep the appearance of the sign as it was prior to the permit issued with the permit tag affixed. Upon determination by administrator and notice to the permittee that a nonconforming sign has become dilapidated or structurally unsound, such sign shall be moved within 20 days.
[[Image here]]
“A. 15.03 Definitions. ‘Except as specifically defined herein, each word used in this article has its customary dictionary definition. For the purposes of this article certain words or terms used are herein defined as follows.’ So we can take the terms structurally unsound or dilapidated, go to the dictionary and find out what they mean.
[[Image here]]
“Q. Let me withdraw and restate what my question is. My question is that you’ve stated to me all the criteria, guidelines, or regulations that are used — that are set out — excuse me — in the sign regulation to determine structurally unsound and dilapidated. Is that correct?
“A. Right.”
Additionally, Sweppenhiser admitted that the ordinance did not contain a definition for “structurally unsound” and that the term “dilapidated” is defined, in part, by “structurally unsound.”
As we stated in City of Mobile, 720 So.2d at 954-55: “ ‘ “[an ordinance] should furnish a uniform rule of action, and its application cannot be left to the arbitrary will of the governing authorities.” ’ ” In light of Sweppenhiser’s testimony, we cannot say that there was a uniform method of determining when a sign becomes structurally unsound or dilapidated. Thus, it would appear the Board’s officials had complete discretion in applying the ordinance.
We conclude that section 15.0403 of the ordinance is unconstitutional because the terms “dilapidated” and “structurally unsound” are impermissibly vague and the application of these terms allows unbridled discretion on the part of the Board’s officials. The judgment of the trial court is due to be reversed and the cause remanded for proceedings consistent with this opinion.
REVERSED AND REMANDED.
ROBERTSON, P.J., and YATES, J., concur.
CRAWLEY and THOMPSON, JJ., dissent.

. In the prior appeal, we did not consider the constitutionality of the zoning ordinance because that question was not properly before this court. The prior appeal was pursuant to § 11-52-81, Ala.Code 1975.
In City of Homewood v. Caffee, 400 So.2d 375, 377-78 (Ala.1981), our supreme court stated:
“The practical effect of [§ 11-52-81] is to require the circuit court to sit as a ‘glorified board of adjustment.' Thus, if Caffee has valid claims not cognizable before the zoning board, he will likewise be precluded from litigating these claims to the circuit court on appeal pursuant to § 11-52-81.
"... [A]n administrative body has no power to declare an ordinance unconstitutional. The powers of the board are specifically limited to those contained in Code 1975, § 11-52-80.”
(Citations omitted.)