Lamar Advertising Company, Inc. ("Lamar"), owns two outdoor advertising billboard structures in Orange Beach. Both were erected before 1991, when the City adopted Zoning Ordinance No. 172. That ordinance provides, in pertinent part:
"15.03 DEFINITIONS
 "Except as specifically defined herein, each word used in this article has its customary dictionary definition. For purposes of this article, certain words or terms used are herein defined as follows:
". . . .
"Dilapidated Sign
 "Any sign which is structurally unsound, has defective parts, or is in need of painting or maintenance.
". . . .
"Nonconforming Sign
 "A sign lawfully erected and legally existing at the time of the effective date of an article, but which does not conform to the new provisions of said code.
". . . .
"15.0403 Nonconforming Signs
 "a. Any sign erected or existing as of the effective date of this article, which has a valid permit from the City of Orange Beach, but which does not conform to the provisions of this article, or any sign pursuant to Section 15.0402(b), is hereby deemed a nonconforming sign. A nonconforming sign may be maintained only by painting or refinishing the surface of the sign face or sign structure so as to keep the appearance of the sign as it was when the prior permit was issued or the City permit tag affixed. Upon a determination by the administrator and notice to the permittee that a nonconforming sign has become dilapidated or structurally unsound, such sign shall be moved within twenty days unless an appeal of such determination has been previously filed with the Board of Adjustment. Any structural or other substantive maintenance to a nonconforming sign shall be deemed an abandonment of the nonconforming sign and shall render the prior permit void and shall result in the reclassification of such sign as an illegal sign pursuant to Section 15.0401."
Lamar's two billboards apparently were "grandfathered" in as nonconforming signs.
In the fall of 1998, winds resulting from Hurricane Georges caused the sign faces of both billboards to blow away. The Board contends that after the storm the face of one sign was on the ground and the post holding the face had fallen and was twisted. According to the Board's petition, Lamar hired an independent contractor to repair the hurricane damage. The contractor replaced the faces of the signs, put a metal brace on one sign, and stabilized the other sign by tying cable or support from a tree to the sign. (Petition at 4-5).
A code-enforcement officer for the Board wrote Lamar two letters, one relating to each billboard. The letters, which were identical, stated:
 "The above-mentioned billboard has been deemed structurally unsound — the sign failed under the winds of Hurricane Georges and exhibits serious pitting and deterioration. This billboard is classified as a nonconforming sign, and when/if it becomes dilapidated or structurally unsound, it must be removed."
Lamar appealed the code-enforcement officer's decision to the Board of Adjustment; the Board denied the appeal. Lamar *Page 53 
appealed the Board's decision to the circuit court, pursuant to § 11-52-81, Ala. Code 1975. The circuit court denied the appeal, and the Court of Civil Appeals affirmed the circuit court's decision on direct appeal, without an opinion. See LamarAdver. Co. v. City of Orange Beach Bd. of Adjustment, (No. 2990143)795 So.2d 850 (Ala.Civ.App. 2000), cert. denied, 807 So.2d 616 (Ala.) (table).
In July 1999, Lamar filed the present action against the Board, challenging the constitutionality of the ordinance.[1] Lamar alleged that the ordinance fails to adequately define significant terms within the ordinance; that it is unconstitutionally vague, overbroad, ambiguous, and arbitrary; and that the arbitrary and capricious enforcement of the ordinance has deprived Lamar of its constitutionally protected property rights. The circuit court entered a judgment denying Lamar's request that it declare the ordinance unconstitutional. Specifically, the circuit court determined that "[t]he significant terms are adequately defined" and that "[a] person of common understanding and knowledge can clearly understand the provisions of the ordinance." Lamar moved to alter, amend, or vacate the judgment. The circuit court denied that motion, and Lamar appealed.
The Court of Civil Appeals, in a 3-2 decision, reversed the circuit court's judgment and declared § 15.0403 of the ordinance unconstitutional because, it reasoned, the terms "dilapidated" and "structurally unsound" are "impermissibly vague and the application of these terms allows unbridled discretion on the part of the Board's officials." Lamar Adver. Co. v. City of Orange Beach Bd. of Adjustment,833 So.2d 46, 48 (Ala.Civ.App. 2000). The Board now petitions this Court for certiorari review.
This Court recognizes "that a municipality may establish a comprehensive land-use plan and effectuate that plan through a scheme of comprehensive zoning regulations." Budget Inn of Daphne, Inc. v. City ofDaphne, 789 So.2d 154, 158 (Ala. 2000). As a result, this Court defers to a municipal zoning ordinance, and we will review a zoning ordinance only to determine if it is arbitrary or capricious. Id. (citing HomewoodCitizens Ass'n v. City of Homewood, 548 So.2d 142, 143 (Ala. 1989); Swannv. Board of Zoning Adjustment of Jefferson County, 459 So.2d 896, 899
(Ala.Civ.App. 1984)). However, in deferring to municipalities in zoning matters, this Court remains cognizant of constitutional concerns:
 "`[T]he presumption of a zoning ordinance's validity must be tempered by the Court's appreciation of the fact that zoning involves governmental restrictions upon a property owner's constitutionally guaranteed
right to use his or her property, unfettered by governmental restrictions, except where the use violates any law, the use creates a nuisance, or the owner violates any covenant, restriction or easement.'"
Budget Inn, 789 So.2d at 158 (quoting PA Northwestern Distrib., Inc. v.Zoning Hearing Bd. of the Township of Moon, 526 Pa. 186, 191,584 A.2d 1372, 1374 (1991)). *Page 54 
The Board argues that the Court of Civil Appeals' determination that the zoning ordinance in this case is unconstitutional conflicts with this Court's decisions in Walls v. City of Guntersville, 253 Ala. 480,45 So.2d 468 (1950), and Board of Zoning Adjustment for the City ofLanett v. Boykin, 265 Ala. 504, 92 So.2d 906 (1957).
In Walls v. City of Guntersville, supra, this Court addressed the constitutionality of a zoning ordinance that provided, in pertinent part:
 "`Any use whatsoever, not in conflict with any other ordinance of the City, is allowed in an Industrial District, provided that no use shall be permitted which would be offensive because of injurious and obnoxious noise, vibrations, smoke, gas, fumes, odors, dust or other objectionable features, or would be hazardous to the community on account of danger of fire or explosion.'"
235 Ala. at 484, 45 So.2d at 471. The ordinance further provided that its provisions would "be administered and enforced by the Mayor or the building inspector and or other person delegated by the Mayor to carry out this function for him." 253 Ala. at 484, 45 So.2d at 470-71. The challenger of the ordinance asserted that the ordinance was an unlawful delegation of power that vested in the delegated agency "an uncontrolled and arbitrary discretion . . . to say what is or is not `offensive' within the meaning of the ordinance." 253 Ala. at 484, 45 So.2d at 471. This Court accordingly framed the relevant inquiry as "whether or not [the terms `injurious and obnoxious noise, vibrations, smoke, gas,' etc.] are so vague and indefinite as to furnish no standard of conduct by which the official in charge under the ordinance may be guided."253 Ala. at 485, 45 So.2d at 471. In upholding the ordinance against the constitutional challenge and determining that its language did not contain "unusual or ambiguous expressions," this Court reasoned:
 "We must be certain that the ordinance is so plainly and palpably inadequate and incomplete as to be convinced beyond reasonable doubt that it offends the constitution or we will not strike it down.
". . . .
 "`. . . [O]rdinances need not always prescribe a specific rule of action . . . some situations require the placing of some discretion in municipal officials, as in cases where it is difficult or impracticable to lay down a definite or comprehensive rule for guidance, or where the discretion relates to the administration of a police regulation and is essential to the protection of the public morals, health, safety, welfare, etc.
". . . .
 "Provisions of such general nature as [in this ordinance] are not uncommon, but are usual in setting out the uses to which property in industrial zones may be restricted. These provisions are uniform in application, the standards set up are not so indefinite as to confer unlimited power and they relate directly to the health and public welfare."
253 Ala. at 485, 45 So.2d at 471 (citations omitted).
In Boykin, this Court interpreted the term "structural alteration," as it was used in the City of Lanett's zoning ordinance, and determined that the actions of the challenging property owner had violated the ordinance. The property owner had made repairs to a nonconforming building, and the City contended that those repairs were not allowed under its ordinance, which prohibited any "structural alteration" to a nonconforming building. Boykin, 265 Ala. at 508, 92 So.2d at 909. This Court held that "the proper test in determining what is a structural alteration to a *Page 55 
nonconforming use is whether an existing nonconforming use is extended and the life of the existing nonconforming building prolonged and not whether there is an increase or decrease in the number of square feet utilized by the nonconforming use." 265 Ala. at 509-10,92 So.2d at 909.
Relying on Walls and Boykin, the Board asserts that Lamar failed to meet its heavy burden of proving that the ordinance is unconstitutional. Specifically, it argues that the language of the zoning ordinance is clear and unambiguous in that it requires the removal of a nonconforming sign when it becomes structurally unsound. The Board says that the meaning of the terms "dilapidated" and "structurally unsound" can be understood when read in the context of the meaning and intent of the entire municipal code section. (Petition at 9.) The Board further asserts that "Lamar's signs failed because they were structurally unsound," and they were structurally unsound because "the beams holding up the face of the signs . . . failed to hold the signs in place." (Brief of petitioner at 13.) According to the Board, Lamar realized that the signs were structurally unsound when its agents "unlawfully braced up the structure of the signs." (Brief of petitioner at 13.)
The Board's arguments are meritorious. The Court of Civil Appeals, in finding § 15.0403, the nonconforming-use provision of the zoning ordinance, unconstitutional, relied on City of Mobile v. Weinacker,720 So.2d 953, 955 (Ala.Civ.App. 1998). In Weinacker, the court held that a City of Mobile sign ordinance was unconstitutional because it was "impermissibly vague and ambiguous" and because "it provide[d] the review boards unbridled discretion." Specifically, the ordinance in Weinacker
required that a certificate of appropriateness be obtained for each sign and that all signs that met the "criteria" be approved by the Board.Weinacker, 720 So.2d at 955. However, according to the Court of Civil Appeals, the ordinance did not provide guidelines to use in determining whether a sign is "appropriate," and, although the "sign-design guidelines" offered some assistance, the guidelines repeatedly used terminology such as "modern materials" and "modern architectural design," without defining those terms. Id. Accordingly, that court held, the ordinance was unconstitutional because it was "impermissibly vague and ambiguous." Id.
The facts of this case are distinguishable from those of Weinacker. The phrase, "structurally unsound," although it allows for some judgment, is not ambiguous in the manner and to the degree that the terms "modern materials" and "modern architectural design" are.
City ordinances are subject to the same general rules of construction, as are acts of the Legislature. S S Distrib. Co. v. Town of New Hope,334 So.2d 905 (Ala. 1976). In John Deere Co. v. Gamble, 523 So.2d 95,99-100 (Ala. 1988), this Court, quoting Clark v. Houston County Comm'n,507 So.2d 902, 903-04 (Ala. 1987), set out the following general rules of statutory construction, which also apply to the construction of municipal ordinances:
 "`The fundamental rule of statutory construction is to ascertain and give effect to the intent of the [city council] in enacting the [ordinance]. Advertiser Co. v. Hobbie, 474 So.2d 93 (Ala. 1985); League of Women Voters v. Renfro, 292 Ala. 128, 290 So.2d 167 (1974). If possible, the intent of the [city council] should be gathered from the language of the [ordinance] itself. Advertiser Co. v. Hobbie, supra; Morgan County Board of Education v. Alabama Public School College Authority, 362 So.2d 850 (Ala. 1978). If the [ordinance] is ambiguous or uncertain, the court may consider *Page 56 
conditions which might arise under the provisions of the [ordinance] and examine results that will flow from giving the language in question one particular meaning rather than another. Studdard v. South Central Bell Telephone Co., 356 So.2d 139 (Ala. 1978); League of Women Voters v. Renfro, supra.'"
In Ex parte Dorough, 773 So.2d 1001, 1003 (Ala. 2000) (citing Ex partePfizer, Inc., 746 So.2d 960, 964 (Ala. 1999)), this Court stated:
 "`"When the language of a statute is plain and unambiguous, . . . courts must enforce the statute as written by giving the words of the statute their ordinary plain meaning — they must interpret that language to mean exactly what it says and thus give effect to the apparent intent of the Legislature." . . .
 "`"In determining the meaning of a statute, this Court looks to the plain meaning of the words as written by the legislature. As we have said:
 "`"`"Words used in a statute must be given their natural, plain, ordinary, and commonly understood meaning, and where plain language is used a court is bound to interpret that language to mean exactly what it says. If the language of the statute is unambiguous, then there is no room for judicial construction and the clearly expressed intent of the legislature must be given effect."'"'"
(Citations omitted.)
Merriam Webster's Collegiate Dictionary (10th ed. 1997) defines "structure" as "something (as a building) that is constructed"; it defines "unsound" as "not firmly, made, placed, or fixed"; and it defines "dilapidated" as "decayed, deteriorated, or fallen into partial ruin esp. through neglect or misuse." A reasonable person would understand that the condition of the signs after Hurricane Georges was "structurally unsound" and "dilapidated."
Because it does not appear that, in the context of the ordinance, the terms "structurally unsound" and "dilapidated" are impermissibly vague and ambiguous so that the ordinance is "plainly and palpably inadequate and incomplete," Walls, 253 Ala. at 485, 45 So.2d at 471, we reverse the judgment of the Court of Civil Appeals and remand the case to that court for it to order the reinstatement of the judgment of the trial court.
REVERSED AND REMANDED.
Moore, C.J., and Houston, Lyons, Brown, Johnstone, Harwood, and Woodall, JJ., concur.
Stuart, J., recuses herself.*
* Stuart, J., was the trial judge in this case.
[1] The Court of Civil Appeals' opinion in the appeal in this case indicates that the ordinance's constitutionality was not considered in the earlier action because that appeal was taken pursuant to §11-52-81, Ala. Code 1975. Lamar Adver. Co. v. City of Orange Beach Bd. ofAdjustment, 833 So.2d 46 (Ala.Civ.App. 2000) "The practical effect of [§ 11-52-81] is to require the circuit court to sit as a `glorified board of adjustment.' . . . [A]n administrative body has no power to declare an ordinance unconstitutional." City of Homewood v. Caffee, 400 So.2d 375, 377-78
(Ala. 1981).