PITTMAN, Judge.
In September 2010, Roland Francis Properties, LLC (“RFP”), applied to the Mobile City Planning Commission (“the Commission”) for approval of a Planned Unit Development (“PUD”) in order to build an apartment complex in Mobile. The Commission approved RFP’s application in October 2010. Neighboring property owners, Jeffrey Grizzard and Phil Gabriel (“the PUD opponents”), appealed from the Commission’s decision to the Mobile City Council, which upheld the Commission’s action on November 8, 2010. On November 16, 2010, the PUD opponents filed in the Mobile Circuit Court a complaint seeking a judgment declaring that the Commission’s approval of RFP’s application was in violation of § 64-5, Mobile City Code, and requesting injunctive relief to halt the PUD.
The case came before the circuit court for a bench trial 10 months later, in September 2011. In the meantime, construction on the PUD project had begun in December 2010 and was more than two-thirds complete at the time of trial. On October 4, 2011, the circuit court entered a judgment voiding the Commission’s approval of the PUD application on the ground that such approval violated § 64-5 and thereby denied the PUD opponents due process of law. In addition, the circuit court invalidated the construction permits that had been issued to RFP and issued a stop-work order.
On October 10, 2011, RFP moved the circuit court to issue an immediate stay of enforcement of its October 4, 2011, judgment. The City of Mobile and the Commission (“the municipal parties”) joined that motion. On November 3, 2011, RFP and the municipal parties filed separate appeals to the supreme court from the circuit court’s judgment. When the circuit court denied their requests for a stay, RFP and the municipal parties sought a stay in the supreme court on November 9, 2011. The supreme court consolidated the appeals and transferred them, along with the motions for a stay, to this court pursuant to § 12-2-7(6), Ala.Code 1975, on November 10, 2011. On November 29, 2011, this court granted the motions for a stay pending further order of this court.

Standard of Review

“[T]he construction of a [municipal] ordinance is a question of law.” Burnham v. City of Mobile, 277 Ala. 659, 661, 174 So.2d 301, 302 (1965) (citing 8 McQuillin, *189 The Law of Municipal Corporations § 25.71). “The trial court’s interpretation of the provisions of ... an ordinance is a determination of law, which is not entitled to a presumption of correctness on appeal.” Studio 205, Inc. v. City of Brewton, 967 So.2d 86, 87 (Ala.2007) (citing Clark v. Houston Cnty. Comm’n, 507 So.2d 902, 903 (Ala.1987)).

Discussion

Section 64-5 of the Mobile Municipal Code deals with PUDs. Paragraph A sets out the purposes and objectives of a PUD:
“1. Purposes. Under the regulations prescribed by this chapter for the various districts, a separate building site is required for each building other than an accessory building. For the purpose of allowing and encouraging variety of design and flexibility of location for buildings comprising a planned unit development (PUD) under this section, the requirement for a separate building site for each building is waived and the land occupied by the planned unit development is considered to be the building site for the group of buildings as a whole.
“It is the further purpose of this section to encourage the unified development of tracts of land that are suitable in size, location, and character for the uses and buildings proposed. To that end, the application of the district regulations governing development on a lot-by-lot basis is modified for planned unit developments, hereinafter called PUDs, that meet the objectives and conform to the standards of this section.
“Although PUDs are most commonly multiple-family residential projects, such other building groups as shopping centers and industrial parks, as well as one-family residential projects using innovative building types and arrangements, may be designed and developed under this section.
“2. Objectives. In pursuit of these purposes, the objectives to be met by a PUD are as follows:
“a. Creative design. To encourage innovative’ and diversified design in building form and site development;
“b. Flexibility. To permit greater flexibility in the location and arrangement of buildings and uses than is generally possible under district regulations;
“c. Efficient land use. To encourage the most efficient and sustainable use of land, especially tracts in the inner part of the city that remain undeveloped or that are appropriate for redevelopment;
“d. Environment. To preserve and protect as urban amenities the natural features and characteristics of the land;
“e. Open space. To encourage the provision of common open space through efficient site design;
“f. Public services. To encourage optimum use of available public utilities, streets and community facilities.”
Paragraph B of § 64-5 sets out the modifications and limitations to which a PUD is subject. “Modifications” encompass matters such as permitted uses and residential building types within various zoning classifications, as well as building-site area and yard requirements. Under “Limitations” the following appears:
“2. Limitations. Planned unit developments shall be subject to the following limitations:
“a. Size of tract. The tract of land to be occupied by the PUD shall be of sufficient size to accommodate the proposed uses and buildings in a homogeneous and harmonious entity (as *190 distinguished from typical lot-by-lot development).
“b. Public services. No PUD shall be approved unless the planning commission determines, upon advice of the appropriate authorities, that the water, sanitary and drainage facilities, access streets and fire protection are adequate to meet the demands of the PUD.”
(Emphasis added.) All parties agreed that Knollwood Drive, the access road leading to the PUD, was inadequate to meet the demands of the PUD. Despite the emphasized language in ¶ B.2.b. of § 64-5 — that “[n]o PUD shall be approved unless the planning commission determines ... that the ... access streets ... are adequate to meet the demands of the PUD” — the Commission approved the PUD application on the condition that RFP make improvements to the access road, without which no certificate of occupancy would be issued. Deputy Director of City Planning Richard Olsen testified that, during his 24 years of employment with the City, it had been the practice of the Commission to approve PUD applications “subject to” certain conditions. That practice, Olsen said, had been based upon ¶ D.2.c. of § 64-5, which provides:
“Action on development plan. Within a reasonable time, the planning commission shall approve, approve with modifications and/or conditions, or disapprove the development plan. If approval of the development plan stipulates modifications or conditions, such modifications or conditions shall be illustrated on the development plan prior to its submittal for permitting.”
(Emphasis added.) Further, Olsen said, the municipal parties had consistently interpreted the pertinent provisions of § 64-5 to allow the satisfaction of conditional items to “proceed at the same time as construction of the project itself,” rather than to require that conditional items be completed before construction of a proposed project. In fact, Olsen acknowledged that some items listed in ¶ B.2.b. as “public services,” such as fire protection, can only be accomplished contemporaneously with the project itself. RFP and the municipal parties contend that the PUD opponents’ interpretation of ¶ B.2.b. ignores the financial reality that no developer would be willing to undertake the estimated $300,000 in improvements to the access road without first having a PUD approval in hand.
The PUD opponents argued in the circuit court and continue to maintain on appeal that, pursuant to ¶ B.2.b., necessary improvements to the access road were required to be made before the PUD application was approved and that the Commission exceeded its authority by conditionally approving the application when the access road was demonstrably inadequate.
We are therefore required to determine whether ¶ B.2.b., specifically the adequate-access-street provision of that paragraph, states a sine qua non requirement for approval of a PUD application or whether the adequate-access-street provision of ¶ B.2.b. can be the subject of an “approval with conditions” pursuant to ¶ D.2.c.
“City ordinances are subject to the same general rules of construction, as are acts of the Legislature. S & S Distrib. Co. v. Town of New Hope, 334 So.2d 905 (Ala.1976). In John Deere Co. v. Gamble, 523 So.2d 95, 99-100 (Ala.1988), [our supreme court], quoting Clark v. Houston County Comm’n, 507 So.2d 902, 903-04 (Ala.1987), set out the following general rules of statutory con *191 struction, which also apply to the construction of municipal ordinances:
“ ‘ “The fundamental rule of statutory construction is to ascertain and give effect to the intent of the [city council] in enacting the [ordinance]. Advertiser Co. v. Hobbie, 474 So.2d 93 (Ala.1985); League of Women Voters v. Renfro, 292 Ala. 128, 290 So.2d 167 (1974). If possible, the intent of the [city council] should be gathered from the language of the [ordinance] itself. Advertiser Co. v. Hobbie, supra; Morgan County Board of Education v. Alabama Public School & College Authority, 362 So.2d 850 (Ala.1978). If the [ordinance] is ambiguous or uncertain, the court may consider conditions which might arise under the provisions of the [ordinance] and examine results that will flow from giving the language in question one particular meaning rather than another. Studdard v. South Central Bell Telephone Co., 356 So.2d 139 (Ala.1978); League of Women Voters v. Renfro, supra.” ’ ”
Ex parte City of Orange Beach Bd. of Adjustment, 833 So.2d 51, 55-56 (Ala.2001). “When interpreting an ordinance, each word or phrase must be given meaning so that no part is rendered void, superfluous, contradictory, or insignificant. Ordinances should be read in pari materia when relevant.” 1A Norman J. Singer & J.D. Shambie Singer, Sutherland Statutes and Statutory Construction § 30:6 (7th ed.2009) (footnotes omitted). “[T]he whole [ordinance] under construction should be examined and, if possible, each section should be given effect.” Employees’ Ret. Sys. of Alabama v. Head, 369 So.2d 1227, 1228 (Ala.1979). “ ‘ “ ‘There is a presumption that every word, sentence, or provision [of an ordinance] was intended for some useful purpose, has some force and effect, and that some effect is to be given to each, and also that no superfluous words or provisions were used.’ ” ’ ” Surtees v. VFJ Ventures, Inc., 8 So.3d 950, 970 (Ala.Civ.App.2008) (quoting Ex parte Uniroyal Tire Co., 779 So.2d 227, 236 (Ala.2000), quoting in turn Sheffield v. State, 708 So.2d 899, 909 (Ala.Crim.App.1997)). “Instead of taking one isolated and narrowly construed sentence of [a section in an ordinance], we should look to the entire framework of the [ordinance], the intents and purposes of the [ordinance] and the means by which it has been given construction, effect and operation during its years of existence.” Jordan v. City of Mobile, 260 Ala. 393, 401, 71 So.2d 513, 520 (1954).
Application of the foregoing principles of construction leads us to the conclusion that the PUD opponents’ interpretation of ¶ B.2.b. is impermissibly narrow and constrained. Their interpretation ignores the intent of the city council, as gathered from the language of the ordinance, specifically ¶A.1 (“to encourage the unified development of [PUDS] ”), and ¶^2£ (“[t]o encourage optimum use of available public utilities, streets and community facilities”). The interpretation advocated by the PUD opponents also disregards the results that likely will flow from giving ¶B.2.b. the meaning they suggest. As the Commission implicitly recognized in approving the PUD application conditioned' on later improvement of the access road, to construe ¶B.2.b. as the PUD opponents propose would actually discourage PUDs because few developers would undertake costly off-site improvements without the assurance that their PUD proposal had been approved. Finally, and most importantly, the reading of ¶ B.2.b. advocated by the PUD opponents leaves no room for the operation of ¶ D.2.C., a provision of the Mobile City Code that, the evidence indicated, the Commission had relied upon for *192 decades without challenge.[1] “Instead of taking one isolated and narrowly construed sentence of [¶ B.2.b.], we should look to the entire framework of [§ 64-5], the intents and purposes of [¶ D.2.C.] and the means by which it has been given construction, effect and operation during its years of existence.” Jordan, 260 Ala. at 401, 71 So.2d at 520.
The interpretation of ¶ B.2.b. advanced by the PUD opponents is not only inconsistent with well-established principles of statutory construction, it is also unsupported by City of Tuscaloosa v. Bryan, 505 So.2d 330 (Ala.1987), the primary authority the PUD opponents cite in defense of their reading of the ordinance. The PUD opponents interpret ¶ B.2.b. as a limitation on the Commission’s administrative power to approve a PUD application. The circuit court evidently agreed, because its judgment quoted the following statement by the Bryan court: “[0]rdinances regulating PUDs are intended to protect neighboring property owners by setting out specific prerequisites which must be met by applicants prior to approval.” 505 So.2d at 336 (emphasis added).
Presumably, the circuit court analogized the “specific prerequisite” that had not been met prior to the approval of the PUD in Bryan to the access-road improvement that had not been accomplished by RFP in the present case. Bryan, however, is distinguishable because it addressed a completely different question from the question presented here: whether a municipality had violated its own zoning ordinance when it approved a PUD that did not substantially comply with the requirements of that zoning ordinance. The “specific prerequisite” that had not been met in Bryan, therefore, was compliance with another ordinance, specifically, a zoning ordinance, without which the municipality had no authority to approve the PUD. In Bryan our supreme court stated:
“Notwithstanding its flexibility, a PUD must still fit into a municipality’s comprehensive zoning plan. Clearly, ordinances regulating PUDs are intended to protect neighboring property owners by *193 setting out specific prerequisites which must be met by applicants prior to approval. Compliance with these prerequisites serves to insure that a PUD, as proposed, will fit into the municipality’s existing comprehensive zoning plan. Therefore, there must be compliance with the ordinance. 82 Am.Jur.2d Zoning and Planning, [§ 106 (1976) ].”
505 So.2d at 336 (emphasis added). The quote from Bryan that appears in the circuit court’s judgment and that is emphasized above is an abbreviated version of our supreme court’s holding taken out of context from the passage in which it appears.
In contrast to the situation in Bryan, the “specific prerequisite” that RFP had not met when its PUD application was approved — the access-road improvement— was not a sine qua non requirement for approval of RFP’s application and did not deprive the Commission of the authority to approve the PUD. That is so precisely because ¶ D.2.c. authorized the Commission to approve the project “with conditions.”
In Boulder Corp. v. Vann, 345 So.2d 272, 275 (Ala.1977), our supreme court stated that, “[i]n exercising its function approving or disapproving any [PUD], the Commission acts in an administrative capacity, and is bound by any limitations on its authority contained in the legislation authorizing it to act.” Because ¶ D.2.c. broadens rather than limits the authority of the Commission to approve a PUD by allowing an approval “with conditions,” ¶ D.2.c. must be read in pari materia with ¶ B.2.b. to the end that each provision is “given meaning so that no part [of § 64-5] is rendered void, superfluous, contradictory, or insignificant.” 1A Singer & Singer, Sutherland Statutes and Statutory Construction § 30:6.
Because the circuit court’s construction of the PUD ordinance erroneously overlooked the effect of ¶ D.2.C., a provision that expressly allows approval of a PUD application “with conditions,” its judgment is reversed and the cause is remanded. Our disposition of these appeals renders the previously imposed stay of the circuit court’s judgment moot.
2110169 — REVERSED AND REMANDED.
2110170 — REVERSED AND REMANDED.
THOMPSON, P.J., and BRYAN, THOMAS, and MOORE, JJ„ concur.

. RFP points out in its appellate brief that, after the entry of the circuit court’s judgment in this case, the City amended ¶ B.2.b. on January 10, 2012, to read as follows:
"B. Modifications and limitations.
"2. Limitations. Planned unit developments shall be subject to following limitations:
"b. Public services. No PUD shall be approved unless the planning commission determines, upon advice of the appropriate authorities, that the water, sanitary and drainage facilities, access streets and fire protection are adequate to meet the demands of the PUD.
"Provided, however, that the planning commission may approve a PUD prior to construction of such facilities, access streets and fire protection as recommended by the appropriate authorities to meet the demands of the PUD, if the planning commission specifies the completion of such recommended improvements prior to the issuance of a Certificate of Occupancy as a condition of the PUD approval.
"II. REPEAL OF CONFLICTING ORDINANCE.
“All Ordinances or parts of Ordinances in conflict with the provisions of this Ordinance, insofar as they conflict, are hereby repealed.”
A popular treatise states:
“An amendment which in effect construes and clarifies a prior statute must be accepted as the legislative declaration of the meaning of the original act, where the amendment was adopted soon after the controversy arose concerning the proper interpretation of the statute. This has led courts to logically conclude that an amendment was adopted to make plain what the legislation had been all along from the time of the statute’s original enactment.”
1A Singer & Singer, Sutherland Statutes and Statutory Construction § 22:31 (footnotes omitted).