THOMAS, Judge.
In 1989, Tacala, Inc., constructed an 80-foot-high sign advertising its restaurant, a Taco Bell franchise, along the interstate in Trussville (“the Taco Bell sign”). The Taco Bell sign is not located on the premises of the restaurant. In 2006, the City of Trussville (“the City”) enacted a new sign ordinance that prohibited off-premises signs[1] within the city limits. The 2006 sign ordinance, in § 80.0(A) and (C), provided that nonconforming signs, which the ordinance defined as “signs that were lawfully erected, but that fail to conform to one or more provisions of [the 2006 sign ordinance],” could remain as erected. According to § 30.0(C)(2), nonconforming signs could be maintained, provided that “no structural alterations or other changes that would extend its useful life” were made to the nonconforming sign. Section 30.0(B) of the 2006 sign ordinance further *627 stated that “[i]t is the intent of this Ordinance to eventually eliminate all non-conforming signs within the City either through measures designed to eventually bring them in compliance with the provisions of the sign ordinance or by their removal.”
In September 2011, tropical-storm-force winds damaged the Taco Bell sign. The Taco Bell signpost was separated at its second joint such that it leaned toward a nearby restaurant, presenting a danger to that property and to the patrons of that restaurant. The City’s building inspector, Dan Sargent, and the City Engineer, Dwight Waldrop, inspected the Taco Bell sign and informed Lynn Tolbert, who maintains the Taco Bell sign for Tacala, that the Taco Bell sign was damaged and would have to be removed. Because Tol-bert informed Sargent that he lacked the equipment to remove the Taco Bell sign that day, Sargent instructed Tolbert to take steps to make the Taco Bell sign safe until it could be removed. Tolbert then welded what Sargent described as metal “fins” around the bent portion of the Taco Bell signpost.
Pursuant to § 31.0 of the 2006 sign ordinance, Sargent later sent a notice to Taca-la. Section 81.0 provides, in pertinent part:
“If at any time the Engineering and Inspections Department, after an inspection, determines that a sign ... endangers the public safety due to material, electrical, or structural deficiencies ... the Department shall proceed in accordance with this section. Upon such determination, the Engineering and Inspections Department shall prepare a notice which shall describe the sign and its location and which shall state, if the violation or violations are not corrected within ten (10) working days after receipt for permanent signs ..., the sign, including the sign face, supports, and all structural members pertaining to said sign, shall be removed and the cost of said removal billed to the property owner and/or sign owner....
“Any person found to be in violation of any of the provisions of this Article shall be given ten (10) working days by written notice to remedy such violations for permanent signs.... ”
In the notice sent to Tacala, Sargent explained that he had determined that the Taco Bell sign was a nonconforming sign under § 30.0 of the 2006 sign ordinance, that the Taco Bell sign had been structurally damaged by the September 2011 winds, and that the repairs necessary to stabilize the Taco Bell sign would be a structural alteration not permitted under § 30.0(C)(2) of the 2006 sign ordinance. The notice further relied on § 31.0 of the 2006 sign ordinance, which, as quoted above, requires the City to give a sign owner notice that its sign endangers the public safety and to give the sign owner 10 days to correct any violation of the 2006 sign ordinance. However, because Sargent had concluded that the repairs to the Taco Bell sign would violate § 30.0(C)(2) relating to nonconforming signs by structurally altering it to extend its useful life, the notice to Tacala instructed Tacala to remove the Taco Bell sign instead of providing Tacala 10 days to correct or remedy the violation of the 2006 sign ordinance.
Tacala sought review of Sargent’s decision from the Board of Zoning Adjustment of the City of Trussville (“the Board”). After a hearing, the Board unanimously upheld Sargent’s decision that the Taco Bell sign must be removed. Tacala then appealed the Board’s determination to the Jefferson Circuit Court. The City intervened in the action; because the City’s interests are aligned with those of the Board, we will hereinafter refer to the City *628 and the Board collectively as “the City defendants.”
Both the City defendants and Tacala moved for a summary judgment, each providing various supporting materials. After a hearing, the trial court denied the City defendants’ motion for a summary judgment and entered a summary judgment in favor of Tacala. In its order, the trial court concluded that the City had not complied with the 2006 sign ordinance because it had not permitted Tacala to correct or remedy the violation of the ordinance and had instead ordered Tacala to remove the Taco Bell sign; based on that conclusion, the trial court granted Tacala’s motion for a summary judgment. The trial court further concluded that Sargent’s reliance on the language contained in § 30.0(C)(2) of the 2006 sign ordinance was arbitrary because the phrase “extend its useful life” was, according to the trial court, “imper-missibly ambiguous and vague” and “unenforceable as written”; based on that conclusion, the trial court denied the City defendants’ motion for a summary judgment. The City defendants appeal.
On appeal, the City defendants make three distinct arguments: whether the trial court erred in applying the wrong standard of review to the Board’s determination, whether the trial court improperly struck down § 30.0 of the 2006 sign ordinance as “unconstitutional,” and whether the trial court ignored the plain language of the ordinance and the canons of statutory interpretation in invalidating the City’s notice to Tacala and, they say, repealing by implication that portion of § 30.0(C)(2) prohibiting the structural alteration of nonconforming signs in such a way as to extend their useful life. Tacala argues that the trial court applied the proper standard to its review of the appeal from the Board’s decision and that the trial court was correct in concluding that the City violated § 31.0 of the 2006 sign ordinance by not providing Tacala 10 days to remedy any violation of the ordinance. Furthermore, Tacala argues that the trial court did not hold § 30.0(C)(2) unconstitutional but merely declared that it was “unenforceable as written.” Finally, Tacala argues that the trial court did not repeal any portion of the 2006 sign ordinance.
We review a summary judgment de novo; we apply the same standard as was applied in the trial court. A motion for a summary judgment is to be granted when no genuine issue of material fact exists and the moving party is entitled to a judgment as a matter of law. Rule 56(c)(3), Ala. R. Civ. P. A party moving for a summary judgment must make a prima facie showing “that there is no genuine issue as to any material fact and that [it] is entitled to a judgment as a matter of law.” Rule 56(c)(3); see Lee v. City of Gadsden, 592 So.2d 1036, 1038 (Ala.1992). If the movant meets this burden, “the burden then shifts to the nonmovant to rebut the movant’s prima facie showing by ‘substantial evidence.’ ” Lee, 592 So.2d at 1038 (footnote omitted). “[S]ubstantial evidence is evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.” West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala.1989); see Ala.Code 1975, § 12-21-12(d). Furthermore, when reviewing a summary judgment, the appellate court must view all the evidence in a light most favorable to the nonmovant and must entertain all reasonable inferences from the evidence that a jury would be entitled to draw. See Nationwide Prop. & Cas. Ins. Co. v. DPF Architects, P.C., 792 So.2d 369, 372 (Ala. 2000); and Fuqua v. Ingersoll-Rand Co., 591 So.2d 486, 487 (Ala.1991).
*629 We first address the argument that the trial court used the incorrect “standard of review” when deciding the appeal from the decision of the Board. We note that it is clear that the statute permitting an appeal from a decision of the Board to the circuit court provides that “the action ... shall be tried de novo” in the circuit court. Ala.Code 1975, § 11-52-81. Caselaw has explained that the circuit court, when considering an appeal from a board of adjustment, “sit[s] as a ‘glorified board of adjustment’ ” and that the circuit court has the powers granted to the board by Ala.Code 1975, § 11-52-80. City of Homewood v. Coffee, 400 So.2d 375, 377 (Ala.1981) (quoting Nelson v. Donaldson, 255 Ala. 76, 80, 50 So.2d 244, 248 (1951)). Thus, contrary to the argument presented by the City defendants, the trial court was not required to review the Board’s decision under an arbitrary-and-capricious standard.[2]
Insofar as the City defendants complain that the trial court declared § 30.0(C)(2) unconstitutional, we agree with Tacala that the summary-judgment order merely determines that § 30.0(C)(2) is unenforceable because the language upon which the City defendants rely is vague. Tacala never challenged the constitutionality of the ordinance before the trial court. Therefore, we conclude, as did our supreme court in Swann v. Board of Zoning Adjustment of Jefferson County, 459 So.2d 896, 901 (Ala.Civ.App.1984) (opinion extended on rehearing), that the trial court did not consider the constitutionality of the ordinance. Furthermore, we note that a circuit court lacks the authority to consider questions relating to the constitutionality of an ordinance when hearing an appeal from a board of adjustment under § 11-52-81. City of Home-wood v. Caffee, 400 So.2d at 378.
now turn to merits of the trial court’s summary-judgment order. We note that the City defendants seek review of both that portion of the trial court’s judg-judgentering a summary judgment in favor of Tacala and that portion of the judgment denying their motion for a sum-sumjudgment. Although the denial of a summary-judgment motion is ordinarily not appealable, our supreme court has ex-exthat an “appeal from a pretrial final judgment disposing of all claims in the case (as distinguished from a Rule 54(b) summary judgment disposing of few-fewthan all claims) entitles the [the appel-appelfor purposes of [appellate] review, to raise issues based upon the trial court’s adverse rulings, including the denial of its summary-judgment motions.” Lloyd No-No-Found., Inc. v. City of Fairfield Healthcare Auth., 837 So.2d 253, 263 (Ala. 2002); see also Tanner v. State Farm Fire & Cas. Co., 874 So.2d 1058, 1066 (Ala. 2003). The trial court’s judgment in the present case resolved all issues before it in the appeal from the Board’s decision. Therefore, we will consider the arguments the City defendants make regarding the trial court’s denial of their motion for a summary judgment.
We begin our analysis of the summary-judgment order in favor of Tacala by focusing on the determination that the City had failed to comply with § 31.0 because it did not give Tacala 10 days to correct or remedy the alleged violation of the 2006 sign ordinance. The City defendants argue that, based on their interpretation of *630 § 30.0, which governs nonconforming signs, the City was not required to provide Tacala 10 days to correct or remedy the issue with the Taco Bell sign because § 30.0 would not sanction structural alterations that would extend the life of the nonconforming Taco Bell sign. Tacala argued below, and argues again on appeal, that it was entitled to the 10 days to attempt to correct or remedy the alleged violations of the 2006 sign ordinance caused by the wind damage to the Taco Bell sign.
We agree with Tacala that the City is required to follow the procedures set out in its own ordinances. See Smith v. City of Mobile, 374 So.2d 305, 307 (Ala. 1979). Even the City defendants agree that § 31.0 required the City to send a notice to Tacala that the Taco Bell sign violated one or more sections of the 2006 sign ordinance. However, we cannot agree with Tacala or the trial court that there is no genuine issue of fact regarding whether the notice that the City sent failed to comply with § 31.0. In explaining the basis for this disagreement, however, we must consider the interplay of §§ 30.0 and 31.0, and, thus, we must construe the 2006 sign ordinance and interpret the language used in its provisions.
“City ordinances are subject to the same general rules of construction, as are acts of the Legislature. S & S Distrib. Co. v. Town of New Hope, 334 So.2d 905 (Ala.1976). In John Deere Co. v. Gamble, 523 So.2d 95, 99-100 (Ala. 1988), [our supreme court], quoting Clark v. Houston County Comm’n, 507 So.2d 902, 903-04 (Ala.1987), set out the following general rules of statutory construction, which also apply to the construction of municipal ordinances:
“ ‘ “The fundamental rule of statutory construction is to ascertain and give effect to the intent of the [city council] in enacting the [ordinance]. Advertiser. Co. v. Hobbie, 474 So.2d 93 (Ala.1985); League of Women Voters v. Renfro, 292 Ala. 128, 290 So.2d 167 (1974). If possible, the intent of the [city council] should be gathered from the language of the [ordinance] itself. Advertiser Co. v. Hobbie, supra; Morgan County Board of Education v. Alabama Public School & College Authority, 362 So.2d 850 (Ala.1978). If the [ordinance] is ambiguous or uncertain, the court may consider conditions which might arise under the provisions of the [ordinance] and examine results that will flow from giving the language in question one particular meaning rather than another. Stud-dard v. South Central Bell Telephone Co., 356 So.2d 139 (Ala.1978); League of Women Voters v. Renfro, supra.” ’ ”
Ex parte City of Orange Beach Bd. of Adjustment, 833 So.2d 51, 55-56 (Ala. 2001).
Furthermore, we have recently explained that we should not construe the language used in an ordinance in isolation. City of Mobile v. Grizzard, 109 So.3d 187, 191 (Ala.Civ.App.2012).
“ ‘When interpreting an ordinance, each word or phrase must be given meaning so that no part is rendered void, superfluous, contradictory, or insignificant. Ordinances should be read in pari mate-ria when relevant.’ 1A Norman J. Singer & J.D. Shambie Singer, Sutherland Statutes and Statutory Construction § 30:6 (7th ed.2009) (footnotes omitted). ‘[T]he whole [ordinance] under construction should be examined and, if possible, each section should be given effect.’ Employees’ Ret. Sys. of Alabama v. Head, 369 So.2d 1227, 1228 (Ala.1979). ‘ “ ‘ “There is a presumption that every word, sentence, or provision [of an ordinance] was intended for some useful *631 purpose, has some force and effect, and that some effect is to be given to each, and also that no superfluous words or provisions were used.” ’ ” ’ Surtees v. VFJ Ventures, Inc., 8 So.3d 950, 970 (Ala.Civ.App.2008) (quoting Ex parte Uniroyal Tire Co., 779 So.2d 227, 236 (Ala.2000), quoting in turn Sheffield v. State, 708 So.2d 899, 909 (Ala.Crim.App. 1997)[, quoting in turn 82 C.J.S. Statutes § 316 at p. 551-52 (1953) ]). ‘Instead of taking one isolated and narrowly construed sentence of [a section in an ordinance], we should look to the entire framework of the [ordinance], the intents and purposes of the [ordinance] and the means by which it has been given construction, effect and operation during its years of existence.’ Jordan v. City of Mobile, 260 Ala. 393, 401, 71 So.2d 513, 520 (1954).”
Grizzard, 109 So.3d at 191.
Finally, we note that one of the most basic principles of statutory construction is that words in a statute, or, in this case, an ordinance, are to be given their commonly understood meaning. See DeKalb Cnty. LP Gas Co. v. Suburban Gas, Inc., 729 So.2d 270, 275 (Ala.1998); Ex parte City of Orange Beach Bd. of Adjustment, 833 So.2d 51, 56 (Ala.2001) (relying on the principle to construe an ordinance). Our supreme court has put it this way:
“In determining the meaning of a statute, this Court looks to the plain meaning of the words as written by the legislature. As we have said:
“ ‘ “Words used in a statute must be given their natural, plain, ordinary, and commonly understood meaning, and where plain language is used a court is bound to interpret that language to mean exactly what it says. If the language of the statute is unambiguous, then there is no room for judicial construction and the clearly expressed intent of the legislature must be given effect.” ’ ”
DeKalb Cnty. LP Gas Co., 729 So.2d at 275 (quoting Blue Cross & Blue Shield v. Nielsen, 714 So.2d 293, 296 (Ala.1998) quoting in turn IMED Corp. v. Systems Eng’g Assocs. Corp., 602 So.2d 344, 346 (Ala.1992)).
The language of § 31.0 requires that a sign owner be notified of any violation of the 2006 sign ordinance and that the sign owner be permitted 10 days to “remedy” or “correct” the violation giving rise to the notice.[3] However, as the City defendants urge, we cannot view the language of § 31.0 in isolation. Because the Taco Bell sign is a nonconforming sign under § 30.0, we must consider what impact the limitations of § 30.0(C)(2) place on the right of the owner of a nonconforming sign to “correct” or to “remedy” a violation under § 31.0 or else we run the risk of permitting a “correction” or “remedy” that would run afoul of the limitation on “structural alterations or other changes that would extend [the sign’s] useful life.”
Section 30.0 makes it clear that the City’s aim is to have nonconforming signs either change to come into compliance with the 2006 sign ordinance or be removed. The City was not permitted to order the removal of all nonconforming signs when it enacted the 2006 sign ordinance. See Budget Inn of Daphne, Inc. v. City of Daphne, 789 So.2d 154, 159 (Ala.2000) (explaining that, although a municipality may pursue the reduction of nonconforming uses, “an existing nonconforming use is a vested property right that a zoning ordinance may not abrogate except in limited circumstances”). However, the stated goal *632 of eradicating nonconforming signs over time is a traditional zoning goal that maybe achieved through “time and attrition.” City of Foley v. McLeod, 709 So.2d 471, 473 (Ala.1998). To that end, the City determined that nonconforming signs, although they could be maintained, see Budget Inn of Daphne, 789 So.2d at 160, could not be structurally altered or changed in a manner that would extend the useful life of the nonconforming sign.
The trial court found the phrase “extend its useful life” used in § 30.0(C)(2) to be vague and ambiguous and thus determined that the 2006 sign ordinance was unenforceable as written. We cannot agree. Although the trial court found fault with the City for not defining the term “useful life” in the ordinance, that alone is not a sufficient basis to declare that the ordinance is too vague and ambiguous to be enforced. Austin v. Alabama Check Cashers Ass’n, 936 So.2d 1014, 1035 (Ala.2005) (noting that the failure of a legislative body to define a term in a statute or ordinance does not make the enactment void for vagueness and that a court does not “subvert[ ] the intent of the legislature [by] applyfing] the plain, ordinary, and commonly understood meaning of a word”); see also Ex parte City of Orange Beach Bd. of Adjustment, 833 So.2d at 56. In fact, the rules of statutory construction provide that, “when a term is not defined in a statute, the commonly accepted definition of the term should be applied.” Bean Dredging, L.L.C. v. Alabama Dep’t of Revenue, 855 So.2d 513, 517 (Ala.2003).
The trial court failed to apply the principles of statutory construction to the language used in the 2006 sign ordinance by failing to consider the commonly accepted definition of the words used in § 30.0(C)(2) and in failing to consider the phrase “extend its useful life” in the context of § 30.0 or the entire ordinance. See Ex parte City of Orange Beach Bd. of Adjustment, 833 So.2d at 56 (rejecting this court’s determination that the terms “structurally unsound” and “dilapidated” were vague and ambiguous based on the dictionary definitions of those terms and in the context of the entire ordinance). The words “extend,” “useful,” and “life” are all commonly understood words. The dictionary definitions of each inform the interpretation of § 30.0 “Extend” is defined as “to cause to be longer”; a suggested synonym is “prolong.” Merriam-Webster’s Collegiate Dictionary 442 (11th ed.2003). “Useful” is defined as “capable of being put to use; [especially]: serviceable for an end or purpose.” Merriam-Webster’s Collegiate Dictionary 1378 (11th ed.2003). “Life” is defined as “the period of duration, usefulness, or popularity of something” or “an opportunity for continued viability.” Merriam-Webster’s Collegiate Dictionary 718 (11th ed.2003). Section 30.0 governs nonconforming signs and has as its purpose the eventual eradication of those signs. Thus, the phrase “extend its useful life” means to cause to lengthen the period during which a nonconforming sign is serviceable for its purpose. We therefore conclude that the trial court erred in determining that the phrase “extend its useful life” was vague, that its vagueness rendered § 30.0(C)(2) “unenforceable as written,” and that Sargent’s reliance on the language of § 30.0(C)(2) was arbitrary.
However, that determination does not resolve the issue whether the trial court erred in entering a summary judgment in favor of Tacala and in denying the City defendants’ motion for a summary judgment. Instead, we must consider whether the evidence before the trial court demonstrated the lack of a material issue of genuine fact regarding whether repairs to the Taco Bell sign would extend the *633 useful life of the Taco Bell sign such that the repairs would be prohibited under § 30.0(C)(2). Only if the evidence before the trial court supports a judgment as a matter of law on that question may we decide whether the notice Sargent provided to Tacala under § 31.0 complied with the requirements set out in that section.
Based on the evidence before the trial court, including photographs, the Taco Bell signpost was damaged by tropical-storm-force winds and was caused to lean toward a nearby restaurant. The photographs and affidavit testimony of Sargent and Waldrop indicate that the Taco Bell signpost had separated at its second joint. Some of the photographs depict the “fins” that, according to Sargent, Tolbert welded to the Taco Bell signpost at the second joint. A discussion of the affidavit testimony and documentary evidence relating to the repairs to the Taco Bell sign is necessary to resolve the issue.
Sargent specifically testified in his affidavit that he permitted the “fins” to be attached to the Taco Bell signpost as a temporary safety measure when Tolbert informed him on the date of the inspection that Tolbert did not have the proper equipment to remove the sign. According to Sargent, Tolbert supported the Taco Bell sign with “a cable extended from a crane” before attaching the metal “fins” to “provide strength and balance.” Sargent further stated in his affidavit that the Taco Bell sign had “suffered major structural damage and required fundamental structural repairs to the joint between the bottom and second segments.”
The City presented the notice Sargent sent to Tacala pursuant to § 31.0. In that notice, Sargent notified Tacala that he had inspected the Taco Bell sign after it was damaged by wind. Sargent described the damage to the Taco Bell sign as “major structural damage.” He further explained that he “had determined that the [Taco Bell] sign endangers the public safety due to those structural deficiencies” and that, pursuant to § 31.0, he was providing notice of that determination to Tacala. Because the Taco Bell sign had suffered structural damage, the notice stated, Sargent had determined that the “work required to repair the [Taco Bell] sign is considered ... a structural alteration [that would extend the useful life of the Taco Bell sign].” Thus, Sargent explained, he had concluded that repair of the Taco Bell sign would violate § 30.0(C)(2) and that the only remaining option to cure the threat to public safety posed by the Taco Bell sign was its removal.
Waldrop also testified by affidavit. He stated in his affidavit that what he described as “stiffener plates” were added to the Taco Bell signpost by Tolbert to provide “structure and strength to the exteri- or of the pylon at the joint where the structure had failed and given way.” Without the “stiffener plates or some other type of structural repair or replacement,” Waldrop stated, “the Taco Bell ... sign would be leaning to one side, exerting abnormal pressure on its structure, and possibly collapsed [sic].” Like Sargent, Waldrop described the damage to the Taco Bell sign as structural in nature.
Tacala presented the affidavit of Marc Barter, a structural engineer. Barter testified in his affidavit that a sign like the Taco Bell sign has “no finite life” and “can remain in perpetuity.” Further, he opined that the addition of the “gussets” added to the Taco Bell signpost did not extend the useful life of the sign. In fact, he stated that the “ ‘gussets’ ... cannot be considered strengthening since the cause of the failure has not been determined and under certain circumstances gusseted connections do not provide additional resistance to failure” and said that the Taco Bell sign *634 “can be returned to its original design configuration and the gussets can be safely removed.”
Based on the evidentiary submissions made by the parties, we cannot conclude that no genuine issue of material fact exists regarding whether repairs to the Taco Bell sign would extend its useful life such that the repairs would violate § 30.0(C)(2). Although a fair reading of the affidavits of Sargent and Waldrop and the notice sent to Tacala support the conclusion that the City has determined that the repairs to the Taco Bell sign are “structural alterations ... that would extend its useful life,” Barter opined that the addition of the “gussets” did not extend the useful life of the sign. Thus, a material fact is in dispute, and, without resolution of that fact question, neither this court nor the trial court can determine whether the repairs to the Taco Bell sign violate § 30.0(C)(2) or whether the notice to Tacala pursuant to § 31.0 complied with the requirement that Tacala be permitted 10 days to correct or remedy any violation of the 2006 sign ordinance. Accordingly, we reverse the summary judgment in favor of Tacala, affirm the denial of the City’s summary-judgment motion, and remand the cause for further proceedings consistent with this opinion.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
THOMPSON, P.J., and MOORE and DONALDSON, JJ., concur.
PITTMAN, J., concurs in the result, without writing.

. Section 2.0(Y) of the 2006 sign ordinance defines an "off-premises sign” as "[a] sign which directs attention to a business, commodity, service or entertainment conducted, sold or offered for sale at a location other than the premises on which the sign is located.”

. We note that the case upon which the City defendants rely. Ex parte City of Fairhope, 739 So.2d 35, 37 (Ala. 1999), involved an original action in the circuit court challenging the grant of a building permit on the ground that the permit violated provisions of the city’s zoning ordinance and did not involve an appeal of the decision of the city’s board of adjustment under § 11-52-81.

. No party contests the meaning of the terms "correct” or "remedy” used in § 31.0; clearly, the parties consider those terms to have their traditional meanings.